1 | Richard Montevideo (State Bar No. 116051)
rmontevideo@rutan.com
2 | Alan B. Fenstermacher (State Bar No. 278171)
afenstermacher@rutan.com
3 | RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
4 | Costa Mesa, California 92626-1931
Telephone:  714-641-5100
5 | Facsimile:  714-546-9035

6 | Attorneys for Plaintiff
CITY OF TORRANCE

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| CITY OF TORRANCE, | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| vs. | (1) RESPONSE COSTS PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT ("CERCLA"), 42 U.S.C. § 9607; |
| HI-SHEAR CORPORATION, a Delaware corporation, d/b/a LISI AEROSPACE, | (2) DECLARATORY RELIEF PURSUANT TO CERCLA, 42 U.S.C. § 9613; |
| Defendant. | (3) ABATEMENT OF IMMINENT AND SUBSTANTIAL ENDANGERMENT, RESOURCE CONSERVATION AND RECOVERY ACT ("RCRA"), 42 U.S.C. § 6901, et seq.; |
| | (4) RESPONSE COSTS, INDEMNITY AND CONTRIBUTED UNDER CALIFORNIA SUPERFUND; |
| | (5) BREACH OF THE 2004 LEASE; |
| | (6) NUISANCE; |
| | (7) TRESPASS; |
| | (8) WASTE; |
| | (9) NEGLIGENCE; NEGLIGENCE PER SE; AND |
| | (10) DECLARATORY RELIEF UNDER CALIFORNIA LAW |
| | DEMAND FOR JURY TRIAL [Fed. R. Civ. Proc. 38(b); Local Rule 38-1] |

Plaintiff City of Torrance (hereafter "City"), by and through its Counsel, hereby alleges as follows:

## JURISDICTION

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 6972(a) and 9613(b), and 28 U.S.C § 1367.  This Court has supplemental jurisdiction over the state-law claims in this Complaint pursuant to 28 U.S.C. § 1367(a), as such claims arise from the same "common nucleus of operative facts" as the federal-law claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA" - 42 U.S.C. § 9601 *et seq.*) and the Resource Conservation and Recovery Act ("RCRA" – 42 U.S.C. § 6901 et. seq.).

## VENUE

2.      Venue is proper in the Central District of California pursuant to 42 U.S.C. §§ 6972(a) and 9613(b), and 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff City is a municipal corporation located in the County of Los Angeles and the owner of certain real property located on and within the vicinity of the Torrance Airport/Zamperini Field (the "Airport"), including real property the City leases, on a long term basis, to various tenants (hereafter collectively, "City Airport Property").  An approximately 14 acre portion of the City Airport Property, located at 2600 Skypark Drive, is currently leased by the City to Defendant Hi-Shear Corporation (the "Hi-Shear Property") on a long-term basis.

4.      Defendant Hi-Shear Corporation ("Hi-Shear" or "Defendant") is a Delaware corporation doing business as Lisi Aerospace on the Hi-Shear Property. Hi-Shear has continuously leased some portion of the Hi-Shear Property from the City , and conducted business thereon, since in or about 1954.

/ / /

/ / /

**GENERAL ALLEGATIONS**

5.      Hi-Shear currently leases the Hi-Shear Property from the City pursuant to an August 1, 2004 lease, as amended on July 1, 2014 (the "Lease"), a true and correct copy of which is attached hereto as Exhibit "1".  The Lease is currently in effect, and Hi-Shear has occupied the entire portion of the Hi-Shear Property continuously since at least 2004.

6.      The City alleges, on information and belief, that beginning in or about 1954, in the course of conducting its business and operations in, on, and within the vicinity of the Hi-Shear Property, Hi-Shear received, stored, used, generated, transported, released, discharged and/or disposed of various "hazardous substances," "hazardous materials," "hazardous wastes," and/or "toxic chemicals," as such terms are defined under federal and state law (collectively, "Hazardous Substances"), including but not limited to, a chemical known as trichloroethylene (TCE), which is referred to as a halogenated volatile organic compound ("HVOC"), and potentially other HVOCs such as perchloroethylene ("PCE, " also known as tetrachloroethelene), along with various breakdown chemicals of such HVOCs.

7.      The City has become aware of the existence of various Hazardous Substances contamination, including but not limited to TCE and other HVOC contamination, in soil, soil vapor and/or groundwater, within and migrating from the Hi-Shear Property (collectively, the "Contamination"), and is informed and believes that some or all such Contamination was caused in whole or in part by Hi-Shear's actions, inactions and/or omissions on, within and in the vicinity of the Hi-Shear Property.

8.      The City further alleges that the Contamination has been released and is continuing to be released and to migrate onto other portions of the City Airport Property, including into groundwater throughout the City Airport Property, and potentially beyond the City Airport Property.

9.      In addition to the Hi-Shear Property, the City leases portions of the

City Airport Property to Robinson Helicopter (the "Robinson Property"), Dasco Engineering ("the Dasco Property"), and South Bay Lexus ("the SBL Property"), among other tenants. The City alleges, on information and belief, that Hazardous Substances have migrated from the Hi-Shear Property onto the Robinson Property, Dasco Property, and SBL Property, as well as potentially other portions City Airport Property, which are all downgradient from the Hi-Shear Property.

10. The Hazardous Substances that have been released and/or discharged on the City Airport Property by Hi-Shear, both on and off the Hi-Shear Property, and which have required or will require the assessment, investigation, monitoring, oversight, removal, treatment, mitigation, remediation and/or cleanup from the soil, soil vapor and/or groundwater, are collectively referred to in this Complaint as the "Contamination".

11. Hi-Shear's occupancy of and/or operations on the Hi-Shear Property have resulted in negligent, reckless and/or intentional discharges of Hazardous Substances starting from the 1950s, and resulting in the existence of Contamination on the City Airport Property, specifically including the Hi-Shear Property, the Robinson Property, the Dasco Property and the SBL Property, with the Contamination from the Hi-Shear Property continuing to migrate to downgradient properties each day it remains unabated.

12. Plaintiff City is informed and believes, and based thereon alleges, that the Contamination was caused by various sudden and accidental releases, and other discharges and releases of Hazardous Substances by Defendant Hi-Shear, commencing in or about the 1954, and continuing regularly and consistently each year thereafter throughout the time Defendant Hi-Shear has utilized Hazardous Substances in its operations, with each release and/or discharge of a Hazardous Substance continuing to migrate and be released into and from the soil, soil vapor, air and groundwater within the Hi-Shear Property and other City Airport Property.

13. The Defendant's operations on the Hi-Shear Property have resulted in

negligent, reckless and/or intentional releases and discharges of Hazardous Substances starting from as early as 1954, and resulting in the existence of the Contamination on City Airport Property, with such Contamination continuing to migrate each day it remains unabated.

14.     As a result of Defendant Hi-Shear's actions, inactions and omissions in occupying and/or operating its facility on the Hi-Shear Property, and potentially on other City Airport Property, a condition of pollution and nuisance exists on and off the Hi-Shear Property and other portions of the City Airport Property, including but not limited to in groundwater, resulting in an imminent and substantial endangerment to the health and safety of persons on the Hi-Shear Property, other City Airport Property, and nearby properties, as well as to the general public and the environment.

15.     The City, as the owner of the City Airport Property, specifically including the Hi-Shear Property, the Robinson Property, Dasco Property, and the SBL Property, has been injured and damaged, with the City having incurred and continuing to incur investigation, assessment, mitigation, removal, treatment, remediation and other clean-up and related costs necessary to address the Contamination on and migrating from the Hi-Shear Property and other City Airport Property, including as needed to reduce the risk of harm to the public, other tenants and the environment as a result of such Contamination.  The City has also incurred and will continue to incur property damages and other damages on an ongoing and continuing basis, as a result of the Contamination, including damages in the form of reduced market value and reduced rental value of the Hi-Shear Property and other City Airport Property, and potential damages due to lost rent and loss of use, and other damages resulting from the Contamination, all to be shown in accordance with the proof at the time of trial.

16.     The City has already incurred tens of thousands of dollars in response costs, inclusive of costs incurred as a result of a Water Code section 13267 order

received from the California Regional Water Quality Control Board, Los Angeles Region (hereafter, the "LA Regional Board") on or about April 18, 2016 (the "13267 Order"), along with significant other costs and expenses incurred because of the Contamination, as well as various attorney fees and consultant fees in investigating all potential causes and potentially responsible parties responsible for the Contamination.

17.     On or about July 11, 2017, under the Resource Conservation and Recovery Act ("RCRA" – 42 U.S.C. § 6901 et. seq.), the City, through its counsel, served a formal Notice of Intent to Sue pursuant to 42 U.S.C. § 6972(a)(1)(B) ("RCRA Notice"), on Defendant Hi-Shear.  To date, has failed and refused to abate the imminent and substantial endangerments described in the RCRA Notice.

18.     On or about February 15, 2017, the City, through its counsel, sent a Notice of Default of the Lease to Hi-Shear ("Notice of Default").  In addition to Hi-Shear's obligations under federal and state law, the Lease obligates the Hi-Shear to indemnify, defend and hold the City harmless from all "Environmental Claims," "Environmental Cleanup Liability," and "Environmental Compliance Cost" involving the Hi-Shear Property, as those terms are defined in the Lease.  (Lease, Sections 8.A, 18.B [Ex. "1", pp, 7, 20-24].)  To date, Hi-Shear has failed and refused to honor its obligations under the Lease in this regard, and is default of its obligations under the Lease.

19.     On or about July 11, 2017, the City served its RCRA Notice of the actual and threatened endangerment, injury and damage alleged herein, by mailing a Notification of Abandoned Waste and Intent to Bring Suit Under RCRA, to: Defendant Hi-Shear; the Administrator of the United States Environmental Protection Agency (U.S. EPA); the U.S. EPA's Regional Administrator; and the Executive Officer of the California Regional Water Quality Control Board, Los Angeles Region; the Secretary of the California Environmental Protection Agency; and the Director of the California Department of Resources, Recycling and

1   Recovery.  (Exhibit "2")  To date, Defendant Hi-Shear has failed and refused to

2   abate the imminent and substantial endangerments described in the RCRA Notice.

3                                    **FIRST CAUSE OF ACTION**

4                     (FOR RESPONSE COSTS UNDER CERCLA, 42 U.S.C. § 9607)

5           20.    The City re-alleges the allegations of Paragraphs 1 through 19 above, as

6   though fully set forth and incorporated herein.

7           21.    The City has incurred, and will continue to incur, response costs as a

8   result of the Contamination that are both necessary and consistent with the National

9   Contingency Plan ("NCP"), and were incurred in accordance with the requirements

10  of the Comprehensive Environmental Response, Compensation and Liability Act

11  ("CERCLA" – 42 U.S.C. § 9601 *et seq.*).

12          22.    These necessary costs of response have been and will continue to be

13  consistent with the National Contingency Plan in the form of assessment,

14  investigation, evaluation, monitoring, agency oversight, removal, treatment,

15  mitigation, remediation and/or cleanup costs, as well as additional costs necessary to

16  abate the releases or threatened releases of the Hazardous Substances resulting from

17  the Contamination.

18          23.    Hi-Shear is a "person" who purchased, stored, used, handled,

19  generated, transported, managed, released, arranged for the disposal of, and/or

20  disposed of "Hazardous Substances" in, on, under, within and in the vicinity of the

21  Hi-Shear Property, and, as a long time lessee on and around the Hi-Shear Property,

22  is a "person" who is a current and prior "owner" and "operator" of the Hi-Shear

23  Property, at the time when Hazardous Substances were released and disposed of, all

24  resulting in Defendant Hi-Shear being a "responsible", "liable" and "covered" party

25  pursuant to 42 U.S.C. § 9607.

26          24.    As a result of Hi-Shear's past and/or current operations on the Hi-Shear

27  Property resulting in releases and threatened releases of Hazardous Substances, and

28  their long term occupation of the Hi-Shear Property, and potentially on other City

1 Airport Property, the Hi-Shear Property and such other City Airport Properties are

2 "facilities" in accordance with 42 U.S.C. § 9601(9).

3      25.    Hi-Shear, in its purchase, storage, handling, usage, generation,

4 transportation, management, release, arranging for the disposal of, and/or disposal of

5 Hazardous Substances on the Hi-Shear Property, caused the existence of a release or

6 threatened release of Hazardous Substances in, on, under or within the Hi-Shear

7 Property, and onto and within other property in the vicinity thereof, including onto

8 and within other portions of the City Airport Property.

9      26.    The City has incurred, and will continue to incur, response costs in

10 responding to the releases or threatened releases of the Hazardous Substances,

11 including assessment, investigation, evaluation, monitoring, mitigation, removal

12 and/or remedial action costs, and/or enforcement costs, attorneys' fees, consultant

13 fees, and related costs, which costs are and will continue to be "necessary" costs of

14 response consistent with the National Contingency Plan.

15      27.    The City seeks reimbursement for any and all such past, present, and/or

16 future response costs incurred prior to trial, together with interest thereon, with Hi-

17 Shear being strictly liable to the City for all such amounts under CERCLA.

18                          **SECOND CAUSE OF ACTION**

19      (FOR DECLARATORY RELIEF UNDER CERCLA, 42 U.S.C. § 9613)

20      28.    The City re-alleges the allegations of Paragraphs 1 through 27 above,

21 as though fully set forth and incorporated herein.

22      29.    The City is informed and believes, and alleges on that basis, that an

23 actual controversy exists between the City and Hi-Shear, in that the City contends

24 and Hi-Shear denies, that Hi-Shear is a responsible party for the Contamination and

25 the necessary past and future response costs to investigate and address the same,

26 because Hi-Shear has purchased, stored, handled, used, generated, transported,

27 managed, released, arranged for the disposal of, and/or disposed of Hazardous

28 Substances in, on, under, within and in the vicinity of the Hi-Shear Property, which

are continuing to be released and threatened to be released on and from the Hi-Shear Property on other portions of the City Airport Property; and because Hi-Shear was the "owner" and/or "operator" at the time of the disposal and/or release of Hazardous Substances in, on, under, within and in the vicinity of the Hi-Shear Property; and because Hi-Shear is the current "owner" and "operator" of the Hi-Shear Property as the long term lessee.

30.     The City further contends, and Hi-Shear denies, that Hi-Shear is responsible for all such response costs and damages that have been and will be incurred in the future for activities performed or to be performed in the investigation, assessment, evaluation, monitoring, mitigation, removal, remediation, and/or cleanup of any and all such Hazardous Substances and the Contamination, including any and all necessary removal or remedial action taken or to be taken to respond to the releases and threatened releases of such Hazardous Substances.

31.     The City requests a judicial determination of the respective rights and duties of the City and Hi-Shear with respect to Hi-Shear's responsibility to investigate, assess, evaluate, monitor, mitigate, remove, cleanup and/or remediate any and all releases or threatened releases of any Hazardous Substance on the Hi-Shear Property and from the Hi-Shear Property onto other portions of the City Airport Property, and to compensate and reimburse the City for any and all such response costs the City has incurred and will incur in the future to this end.

32.     Such a judicial declaration setting forth the parties' rights and obligations with respect to the response costs in question, as well as the obligations of the parties, is necessary in order for the respective parties to ascertain their rights and duties with respect to the claims asserted herein.  A determination of such claims is necessary and appropriate in order to avoid the multiplicity of actions that would result if the City is forced to proceed against Hi-Shear after each additional increment of response costs it incurs or as a result of any other recoverable costs the City will incur as a result of Hi-Shear's actions or inactions alleged herein.

### THIRD CAUSE OF ACTION

(FOR ABATEMENT OF IMMINENT AND SUBSTANTIAL
ENDANGERMENT UNDER RCRA, 42 U.S.C. § 6972)

33.  The City repeats and re-alleges paragraphs 1 through 32 above, as though fully set forth and incorporated herein.

34.  The City brings this claim for abatement of an imminent and substantial endangerment to health or the environment resulting from the Contamination, pursuant to Section 7002 of RCRA, 42 U.S.C. § 6972.

35.  Hi-Shear is a "person" within the meaning of RCRA, 42 U.S.C. § 6903(15), and has contributed and/or is contributing to the past or present handling, storage, treatment, transportation or disposal of "solid" and/or "hazardous" wastes, which present an imminent and substantial endangerment to health and/or the environment.

36.  Each of the Hazardous Substances handled, stored, treated, transported, or "disposed" of by Hi-Shear (either directly or by contributing to the handling, storage, treatment, transportation, or disposal), when discarded, was/is a "solid waste," and/or a "hazardous waste," as those terms are defined under RCRA, 42 U.S.C. § 6903(5) and (27), with such "solid" and "hazardous" wastes resulting in the Contamination, and with Hi-Shear thereby creating an imminent and substantial endangerment to health and/or the environment.

37.  Hi-Shear has refused and failed to abate the imminent and substantial endangerments created by their actions and inactions, both on and off the Hi-Shear Property, and such imminent and substantial endangerments therefore remain.

38.  As alleged above, the City served its RCRA Notice on Defendant Hi-Shear and on the U.S. EPA Administrator and Regional Administrator, as well as on various California governmental agencies and more than 90 days has passed but to date, Defendant Hi-Shear has failed and refused to abate the imminent and substantial endangerments described in the RCRA Notice.

39.     Neither the U.S. EPA Administrator, the US EPA Regional Administrator, nor any agency of the State of California, has commenced or is diligently prosecuting an action under either RCRA or CERCLA, including the filing of any lawsuit or the issuance of any order under RCRA or CERCLA.  In addition, none of these agencies have themselves initiated any remedial investigation, feasibility study, or removal or remedial action with respect to the Hi-Shear Property or any other City Airport Property.

40.     Pursuant to RCRA, 42 U.S.C. § 6972(a), the City hereby seeks a prohibitory and/or mandatory injunction to preliminarily and permanently restrain and enjoin Hi-Shear from permitting the imminent and substantial endangerment to health or the environment to continue, and to require Hi-Shear to take such action as may be necessary to abate the imminent and substantial endangerment, and to investigate, assess, monitor, mitigate, remove, remediate, treat and/or cleanup the Contamination on and migrating from the Hi-Shear Property and other City Airport Property.

41.     The City also hereby seeks recovery of all its costs of litigation, including all attorney fees, expert witness fees, and other costs pursuant to RCRA, 42 U.S.C. § 6972(e).

42.     Notice of this Action will be provided to the U.S. EPA Administrator and the U.S. Attorney General.

**FOURTH CAUSE OF ACTION**

(FOR RESPONSE COSTS, INDEMNITY AND CONTRIBUTION

UNDER CALIFORNIA SUPERFUND,

HEALTH & SAFETY CODE SECTION 25363 ET SEQ)

43.     The City repeats and re-alleges paragraphs 1 through 42 above, as though fully set forth and incorporated herein.

44.     The City has incurred and will continue to incur response costs in accordance with the requirements of Chapter 6.8 of Division 20 of the California

Health & Safety Code, California Health & Safety Code section 25300 et seq., for the releases and threatened releases of Hazardous Substances and the Contamination in issue.

45.     The City hereby seeks the recovery, reimbursement, indemnity and contribution from Hi-Shear for any and all past, present and/or future response costs incurred in connection with the Contamination, together with interest thereon, with Hi-Shear being strictly liable to the City for the same, pursuant to California Health & Safety Code section 25363, and all provisions related thereto, including but not limited to all costs incurred and/or to be incurred to assess, mitigate, investigate, treat, remove and/or remediate any Hazardous Substances and/or Contamination in, on, under and migrating from the Hi-Shear, specifically including but not limited to such costs incurred related to the Contamination that has migrated off of the Hi-Shear Property onto other portions of the City Airport Property.

## FIFTH CAUSE OF ACTION

### (FOR BREACH OF 2004 LEASE AGREEMENT)

46.     The City repeats and re-alleges paragraphs 1 through 45 above, as though fully set forth and incorporated herein.

47.     Hi-Shear's actions and inactions in causing the Contamination, and in failing to fully address and cleanup all such Contamination, and to remedy all damages resulting therefrom, constitute breaches and violations of Sections 8 & 18 of the 2004 Lease (Ex. 1), which read as follows:

> Possession of the Leased Premises shall be deemed to have been delivered to Lessee on the Effective Date. Lessee acknowledges and agrees that Lessee (and/or its predecessors-in-interest) has had exclusive possession of the Leased Premises and the Adjoining Premises since 1954 and that Lessee is and shall be responsible for the current condition of the Leased Premises, the Adjoining Premises and any affected surrounding premises, and the improvements located thereon and for the expeditious investigation, removal, and remediation of all Hazardous Materials (as defined in Section 18(B) below) that may have been discharged, released, placed or disposed of

on, in, under, or about the Leased Premises, the Adjoining Premises and any affected surrounding premises, and/or the improvements located thereon, during the term of the Original Lease (except for Hazardous Materials that have migrated onto the Leased Premises, Adjoining Premises, or any affected surrounding premises through no fault of Lessee) and, with respect to the Leased Premises only, during the term of this Lease ("Lessee Contamination"). Lessee further agrees that it shall defend, indemnify and hold City and the City's officers, directors, trustees, members, agents, employees, contractors, consultants and representatives, and City's properly, harmless from any and all claims, demands, liabilities, obligations, expenses and/or penalties arising out of or in connection with Lessee's Contamination in accordance with the provisions of Article 18 below.

(Ex. "1", Lease, § 8.A)

Lessee shall be fully responsible, at Lessee's sole cost and expense, for any and all Lessee Contamination.  Lessee, at Lessee's sole cost and expense, shall take all investigatory and/or remedial action required or ordered by any and all governmental authorities for the clean-up of any Lessee Contamination . . .

Lessee shall defend, indemnify and hold harmless City, City, and their officers, directors, employees, agents and representatives (collectively, the "Indemnified Parties") from and against any and all Lessee Contamination, Environmental Claims, Environmental Cleanup Liability, Environmental Compliance Costs, and any other claims, actions, suits, legal or administrative orders or proceedings, demands or other liabilities (collectively, "Claims") resulting at any time from the physical and/or environmental conditions of the Leased Premises whether before or after the Effective Date or from the existence of any Lessee Contamination and/or other Hazardous Materials of an kind whatsoever, in, on or under the Leased Premises occurring at any time whether before or after the Effective Date, including, but not limited to, all foreseeable and unforeseeable damages, fees, costs, losses and expenses, including any and all attorneys' fees and environmental consultant fees and investigation costs and expenses, directly or indirectly arising therefrom, and including fines and penalties of any nature whatsoever, assessed, levied or asserted against any Indemnified Parties to the extent that the fines and/or penalties are the result of a violation or an alleged violation of any Environmental Law.  (*Id.,* § 18.B.)

48.     Pursuant to Section 8 of the Lease, Hi-Shear is obligated to proceed with the "expeditious investigation, removal, and remediation" of all "Lessee Contamination," and is further obligated to defend, indemnify and hold the City harmless from such "Lessee Contamination," and all "Environmental Claims," "Environmental Cleanup Liability," as well as "Environmental Compliance Cost" (as defined under the Lease) involving the Hi-Shear Property.

49.     Similarly, Section 18 of the Lease expressly obligates Hi-Shear to defend and indemnify the City from and against all claims arising out of the Lessee Contamination, including "expeditiously" addressing all Lessee Contamination that has migrated off the Hi-Shear Property in groundwater (or otherwise), and including any such Contamination that may be the subject of the Regional Board's Section 13267 Order.

50.     To date, Hi-Shear has refused to indemnify and hold the City harmless from and against any and all costs relating to the Contamination, despite a request from the City to do so.

51.     The City further alleges that Hi-Shear has expressly refused to engage in any remediation efforts off of the Hi-Shear Property, including but not limited to on other City Airport Property where the Contamination has migrated.  Hi-Shear's refusal and/or delay to remediate any and all such Contamination, whether or not it is commingled with other releases of Hazardous Substances from other third parties, is a clear breach of Defendant Hi-Shear's obligations under the Lease.

52.     As alleged above, on or about February 15, 2017, the City, through counsel, cause to be delivered a Notice of Default to Defendant Hi-Shear, demanding that Hi-Shear cure its violations/defaults under the Lease.  To date, Hi-Shear has not taken any action to cure said defaults.

53.     The City is and at all times relevant to this Complaint, has been in compliance with all applicable terms, requirements, conditions and obligations of the City in the Lease.

54.     As a result of the actions, inactions and omissions of Defendant Hi-Shear and its violation, default and breaches of the Lease, as alleged above and as may otherwise be shown at the time of trial, the City herein seeks general, compensatory and consequential damages in amounts to be shown in accordance with proof at the time of trial, including all attorneys' fees and litigation costs, fees and expenses, as permitted under the Lease.

## SIXTH CAUSE OF ACTION

### (FOR NUISANCE, CALIFORNIA CIVIL CODE § 3479)

55.     The City repeats and re-alleges paragraphs 1 through 54 above, as though fully set forth and incorporated herein.

56.     The existence of the Contamination on and migrating from the Hi-Shear Property has resulted in a condition which is injurious to the health and offensive to the senses, and which is an obstruction to the free use of the Hi-Shear Property and other portions of the City Airport Property, and an interference with the City's, and its lessees, comfortable use and enjoyment of the City Airport Property.

57.     The existence of the Contamination constitutes a continuing nuisance on the City Airport Property, including on the Hi-Shear Property, and has resulted from the actions, inactions and omissions of the Hi-Shear, whereby Hi-Shear has acted negligently, intentionally and tortiously in causing such nuisance and has acted negligently, intentionally and tortiously in failing to abate and enjoin such nuisance and in failing to investigate, assess, monitor, treat, remove and/or remediate such Contamination.  The nuisance is abatable through the use of reasonable mitigation measures and costs.  Indeed, such measures and costs are required by law.

58.     As a result of the actions and inactions of Hi-Shear, a continuing nuisance exists and continues to exist resulting in damage to the City on a daily basis with each release and/or threatened release of any Hazardous Substance into

and from the soil, soil vapor, groundwater, and/or potentially into and from indoor air within buildings on the City Airport Property, giving rise to a new cause of action.  The failure of the Hi-Shear to timely mitigate, through assessment, investigation, monitoring, mitigation, treatment, removal and remediation, the Contamination in, on, under and migrating from the Hi-Shear Property and any other portion of the City Airport Property, will further increase the damages and injuries the City has and will continue to incur, which accrue daily on a continuing basis.

59.    The nuisance created by the existence of the Contamination in the soil, groundwater, and/or vapor on and off of the HI-Shear Property, is a nuisance that affects the entire community, neighborhood, or a considerable number of persons and that has created and continues to create a significant threat to the public's health and safety, as well as the environment, and is both a private nuisance specially injurious to the Plaintiff City and impacting the City Airport Property, and a public nuisance under California law.

60.    The City has never given Hi-Shear permission or otherwise consented to or allowed the release of the Contamination on the Hi-Shear Property or permitted, consented to, or otherwise allowed its migration to other portions of the City Airport Property off of the Hi-Shear Property.

61.    The condition of pollution and nuisance is specifically injurious to the City in that the damages and injuries resulting therefrom are different in type and effect from any damages or injuries that may have resulted to the entire community or neighborhood, in light of the City's ownership interest in the City Airport Property (specifically including its ownership of the Hi-Shear Property), its leasing of the City Airport Property to other tenants, the impact of the Contamination on the value of the City Airport Property, the potential loss of rent and use damages and market value and rental value to the City resulting from the Contamination, and other damages that are specifically injurious to the City.

62.    As a result of the action, inactions and omissions of Hi-Shear, the City has suffered and will continue to suffer general, compensatory and consequential damages, inclusive of but not limited to any and all amounts incurred and to be incurred for the investigation, assessment, monitoring, treatment, removal and/or remediation of the Contamination, the diminution in value of the City Airport Property, and the loss of use and loss of rent and reduction in rental value of the City Airport Property, all in amounts not yet fully ascertained, but which will be more specifically shown in accordance with proof at the time of trial.  Defendant Hi-Shear's actions and inactions were, at a minimum, a substantial factor in causing the foregoing harm to the City, and are the direct cause of such harm.

63.    The City has requested and continues to seek to have Hi-Shear abate and enjoin the nuisance, but Hi-Shear has failed and refused to do the same, including but not limited to Hi-Shear's specific and express refusal to engage in necessary investigation, assessment and remediation activities on various portions of the City Airport Property, to which the Contamination has migrated from the Hi-Shear Property.  The failure of the Hi-Shear to timely mitigate, through assessment, investigation, monitoring, mitigation, treatment, removal and remediation, the Contamination in, on, under and migrating from the Hi-Shear Property and any other portion of the City Airport Property, will further increase the damages and injuries the City has and will continue to incur, which accrue daily on a continuing basis.

64.    The public does not benefit in any way from Hi-Shear's actions and inactions with respect to the Contamination, and therefore, the City's harm clearly outweighs any "public benefit," which is non-existent.

65.    The City prays that a mandatory and/or prohibitory injunction be issued, requiring Hi-Shear to enjoin and abate said nuisance and/or to perform any and all actions necessary to assess, mitigate, investigate, remove, remediate, monitor, treat, or cleanup the Contamination on, in and migrating from the Hi-Shear

Property and any other portion of the City Airport Property.

### SEVENTH CAUSE OF ACTION

(FOR TRESPASS)

66.    Plaintiffs reallege paragraphs 1 through 65 above as though fully set forth and rewritten herein.

67.    The Contamination existing in the soil and ground on the Property, and potentially in the soil vapor, air and in groundwater, constitutes a continuing trespass on the City Airport Property, both on and off the Hi-Shear Property, caused by the actions, inactions and omissions of the Hi-Shear, whereby Hi-Shear has acted negligently, intentionally and tortiously in causing such trespass and have acted negligently, intentionally and tortiously in failing to abate and enjoin such trespass and in failing to investigate, assess, monitor, treat, remove and/or remediate such Contamination.  The trespass is abatable through the use of reasonable mitigation measures and costs.

68.    The City has not given Hi-Shear permission or otherwise consented to or allowed the release of the Contamination on the Hi-Shear Property or permitted, consented to, or otherwise allowed its migration to other portions of the City Airport Property off of the Hi-Shear Property.

69.    As a result of the actions and inactions of Hi-Shear, a continuing trespass exists and continues to exist resulting in damage to the City on a daily basis with each release and/or threatened release of any Hazardous Substance into and from the soil, soil vapor, groundwater, and/or potentially into and from indoor air within buildings on the City Airport Property, giving rise to a new cause of action.

70.    As a result of the actions and inactions of the Hi-Shear, the City has suffered and will continue to suffer general, compensatory and consequential damages inclusive of but not limited to any and all amounts incurred or to be incurred from the investigation, assessment, monitoring, removal and/or remediation of Contamination, the diminution in market value and rental value of the City

Airport Property, and potentially the loss of use and loss of rent from use of the City Airport Property, and all other amounts to be determined with proof at trial, all of which have not yet been fully ascertained but which will more specifically be shown in accordance with proof at the time of trial.  Hi-Shear's actions and inactions were, at a minimum, a substantial factor in causing the foregoing harm to the City, and in fact are the direct cause of such harm.

71.     The City has requested and continues to request that Hi-Shear abate and enjoin the alleged trespass, but Hi-Shear has failed and refuse to do so and the trespass continues to exist, specifically including but not limited to Hi-Shear's express refusal to engage in any investigation or remediation activities on portions of the City Airport Property, off of the Hi-Shear Property, to which the Contamination has migrated from the Hi-Shear Property.  The failure of the Hi-Shear to timely mitigate, through assessment, investigation, monitoring, mitigation, treatment, removal and remediation, the Contamination in, on, under and migrating from the Hi-Shear Property and any other portion of the City Airport Property, will further increase the damages and injuries the City has and will continue to incur, which accrue daily on a continuing basis.

72.     The City seeks a mandatory and/or prohibitory injunction be issued requiring Hi-Shear to enjoin and abate the alleged trespass and/or to perform any and all assessment, mitigation, monitoring, investigation, removal, remediation, treatment, cleanup or otherwise to accomplish the same.

## EIGHTH CAUSE OF ACTION

### (FOR WASTE)

73.     Plaintiffs reallege paragraphs 1 through 72 above as though fully set forth and rewritten herein.

74.     As a result of Hi-Shear's use, storage, handling and disposal and releases of various Hazardous Substances on the Hi-Shear Property, and the resulting Contamination on and migrating from the Hi-Shear Property onto other

portions of the City Airport Property, Hi-Shear has committed waste on the City Airport Property (including the Hi-Shear Property), resulting in a diminution in the use and marketability of the City Airport Property, and a diminution in the market value and rental value of the City Airport Property.

75.    The damage and waste Hi-Shear has committed to the Hi-Shear Property is in excess of the damage and destruction to the Hi-Shear Property as expected from the reasonable use and wear from the operations to be conducted by Hi-Shear in accordance with the terms of the Lease.

76.    Plaintiffs have requested and continue to seek to have Hi-Shear remove the waste committed to both the Hi-Shear Property and the other portions of the City Airport Property off of the Hi-Shear Property, but Hi-Shear has failed and refused to do so.

77.    As a result of the waste committed to the City Airport Property by Hi-Shear, the City has suffered and will continue to suffer general, compensatory and consequential damages, inclusive of but not limited to any and all amounts incurred and to be incurred for the investigation, assessment, mitigation, monitoring, treatment, removal and/or remediation of the Contamination, the diminution in market value and rental value of the City Airport Property, and potentially the loss of use and loss of rent from use of the City Airport Property, all in amounts not yet fully ascertained, but which will be more specifically shown in accordance with proof at the time of trial.

78.    The City further prays that a mandatory and/or prohibitory injunction be issued requiring defendants to remedy the waste they committed on the City Airport Property, and to perform any and all actions necessary to assess, mitigate, investigate, remove, remediate, treat, monitor and/or cleanup the Contamination on, in and from the City Airport Property, and to remedy the waste committed by Hi-Shear during and as a result of their operations on the Hi-Shear Property.

/ / /

## **NINTH CAUSE OF ACTION**

### (FOR NEGLIGENCE AND NEGLIGENCE PER SE)

79.     Plaintiffs reallege paragraphs 1 through 78 above as though fully set forth and rewritten herein.

80.     The Hazardous Substances on and migrating from the Hi-Shear Property, including all resulting Contamination on and migrating from the Hi-Shear Property, were caused in whole or in part as a result of the negligence and careless actions, inactions and omissions and/or the reckless conduct of Defendant Hi-Shear, in its use, handling, storage, generation, transportation, disposal and arranging for the transportation, storage and disposal of Hazardous Substances, to, on and from the Hi-Shear Property, including in its actions, inactions, omissions and reckless conduct in failing to develop and/or maintain procedures and policies for the proper use, transportation, handling, storage, disposal and arranging for the transportation, storage, and disposal of Hazardous Substances and/or in responding to releases or threatened releases of the same.

81.     Hi-Shear's actions in generating, transporting, storing, disposing of and/or arranging for the transportation, storage and disposal of Hazardous Substances and the resulting Contamination, have resulted in a condition of pollution or nuisance and constitute violations of applicable environmental laws including, but not limited to, CERCLA, RCRA, California Health & Safety Code section 25189.5, et seq. and California Water Code sections 13260, 13264, 13265, 13271, 13272, 13304 and 13305 and related provisions thereto, as well as California Public Resources Code Section 45005 and provisions related thereto.  As such, the actions and inactions and omissions of Defendant Hi-Shear were negligent per se as such actions violate express statutory provisions prohibiting such conduct and activity.

82.     As a result of Defendant Hi-Shear's negligent and reckless actions, inactions and omissions, the City has suffered and will continue to suffer general,

compensatory and consequential damages, including but not limited to amounts incurred or to be incurred by the City for the assessment, mitigation, monitoring, investigation, removal and/or remediation of the resulting Contamination, as well as resulting from the diminution in the market value and rental value of the City Airport Property, and potentially the loss of use and lost rent from use of the City Airport Property, and other amounts that have not been fully ascertained at this time, but all of which will be more specifically shown in accordance with proof at the time of trial.

## **TENTH CAUSE OF ACTION**

### (FOR DECLARATORY RELIEF, CALIFORNIA
### CODE OF CIVIL PROCEDURE § 1060 )

83.     Plaintiffs reallege paragraphs 1 through 82 above as though fully set forth and rewritten herein.

84.     An actual controversy exists between the City and Hi-Shear herein in that the City contends, and Hi-Shear denies, that if the City's allegations with respect to their damages and injury are true, that Hi-Shear has responsibility for such costs and damages that have been or will be incurred for activities performed and/or to be performed in the repair, investigation, assessment, monitoring, mitigation, treatment, removal, remediation and cleanup of the Contamination in, on, under and migrating from the Hi-Shear Property, and for the diminution in the market value and rental value of any portion of the City Airport Property affected by the Contamination, and potentially the loss of use and lost rent from use of the City Airport Property because of the Contamination, and for such other damages and costs that the City has or will incur.

85.     Plaintiffs request a judicial determination and declaration setting forth the parties' rights and obligations as necessary and appropriate in order to avoid a multiplicity of actions and in order for the respective parties herein to ascertain their rights and duties with respect to the City's claims herein, and each of them.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff City prays for judgment in its favor and against Defendant Hi-Shear as follows:

1. For the recovery of all "response costs" incurred and/or to be incurred by the City in connection with the release and/or threatened release of Hazardous Substances and Contamination on, in, under and migrating from the Hi-Shear Property;

2. For reimbursement of costs, restitution and a mandatory and/or prohibitory injunction requiring the Defendant Hi-Shear to enjoin and abate the alleged Hazardous Substances and Contamination, and to perform any and all necessary repair, investigatory, assessment, monitoring, removal, mitigation, remediation, treatment or cleanup, or other similar work on and at the Hi-Shear Property, and/or in the vicinity of the Hi-Shear Property, specifically including within any portion of the City Airport Property affected by the Contamination;

3. For a judicial determination and declaration setting forth the parties' rights, obligations, and duties pursuant to CERCLA;

4. For a prohibitory and/or mandatory injunction pursuant to 42 U.S.C. § 6972, preliminarily and permanently restraining and enjoining Defendant Hi-Shear from permitting the imminent and substantial endangerment to health and/or the environment to continue, and requiring Defendant Hi-Shear to take all action necessary to fully abate the imminent and substantial endangerment, including, all action as needed to assess, investigate, monitor, mitigate, treat, remove, remediate or otherwise cleanup and abate the Contamination on, in, under and migrating from the Hi-Shear Property;

5. For general, compensatory and consequential damages in amounts to be shown in accordance with proof at the time of trial;

6. For a judicial determination and declaration setting forth the parties' rights, obligations and duties pursuant to California law;

7.     For attorneys' fees, expert fees and costs, and/or litigation costs and fees, as allowed by law, including but not limited to, where permitted under RCRA, 42 U.S.C. § 6972(e), the Lease and/or where otherwise permitted by law;

8.     For prejudgment interest on such sums found to be owing at the statutory rate; and

9.     For such additional and further relief in law or equity, as this Court may deem just and proper.

Dated:  October 23, 2017                      RUTAN & TUCKER, LLP
                                              RICHARD MONTEVIDEO
                                              ALAN B. FENSTERMACHER

                                              By:        /s/ Richard Montevideo
                                                   Richard Montevideo
                                                   Attorneys for Plaintiff
                                                   CITY OF TORRANCE


## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial.

Dated:  October 23, 2017                      RUTAN & TUCKER, LLP
                                              RICHARD MONTEVIDEO
                                              ALAN B. FENSTERMACHER

                                              By:        /s/ Richard Montevideo
                                                   Richard Montevideo
                                                   Attorneys for Plaintiff
                                                   CITY OF TORRANCE