David L. Evans (State Bar No. 155634)
*dlevans@hamricklaw.com*
Thomas P. Schmidt (State Bar No. 157831)
*tschmidt@hamricklaw.com*
Jeff Poole (State Bar No. 291783)
*jpoole@hamricklaw.com*
HAMRICK & EVANS, LLP
2600 West Olive Avenue, Suite 1020
Burbank, California 91505
Telephone No.: (818) 763-5292
Fax No.: (818) 763-2308

Attorneys for Defendant, Counter-
Claimant, and Third-Party Plaintiff
HI-SHEAR CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF TORRANCE,<br><br>        Plaintiff,<br>    v.<br><br>HI-SHEAR CORPORATION, a Delaware corporation, d/b/a LISI AEROSPACE,<br><br>        Defendant. | Case No.: 2:17-cv-07732-DSF-JPR<br>(*Case assigned to Hon. Dale S. Fischer*)<br><br>**HI-SHEAR CORPORATION'S THIRD-PARTY COMPLAINT FOR:**<br><br>**1. CONTRIBUTION UNDER CERCLA**<br>**2. COST RECOVERY UNDER CERCLA**<br>**3. DECLARATORY RELIEF UNDER CERCLA**<br>**4. CONTRIBUTION UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**<br>**5. DECLARATORY RELIEF UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**<br>**6. TOTAL INDEMNITY**<br>**7. EQUITABLE INDEMNITY** |
| HI-SHEAR CORPORATION,<br><br>        Counter-Claimant,<br>    v.<br><br>CITY OF TORRANCE,<br><br>        Counter-Defendant. | |
| HI-SHEAR CORPORATION,<br><br>        Third-Party Plaintiff,<br>    v.<br><br>EFOC, INC., a Pennsylvania corporation, d/b/a ERIE PRESS SYSTEMS; The estate of ELISABETH P. FRUDENFELD, a deceased individual; the executor, administrator, or trustee of the estate of ELISABETH P. FRUDENFELD, a deceased individual; the estate of KARL | Complaint Filed:   10/23/2017<br><br>Trial Date:      None Set<br><br>DEMAND FOR JURY TRIAL |

-1-

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FRUDENFELD; the executor, administrator, or trustee of the estate of KARL FRUDENFELD a deceased individual; the trustees of a certain TRUST AGREEMENT DATED NOVEMBER 1, 1977, BETWEEN KARL FRUDENFELD AND ELISABETH P. FRUDENFELD; KARLA FRUDENFELD, an individual; the trustees of a certain FREDRICK AND MARGARET SUTTON TRUST; CRAIG FRUDENFELD, an individual, as custodian for ALEXANDER FRUDENFELD, AARON FRUDENFELD, and WENDI FRUDENFELD; ALEXANDER FRUDENFELD, an individual; AARON FRUDENFELD, an individual; WENDI FRUDENFELD, an individual; LAURI COOK, an individual, as custodian for MARINA COOK; MARINA COOK, an individual; ARBA, INC., a California corporation; PAUL SIMMONS GOLF COMPANY, a business entity form unknown; ROBINSON HELICOPTER COMPANY, INCORPORATED, a California corporation; REXNORD INDUSTRIES, LLC, a Delaware limited liability company, d/b/a REXNORD AEROSPACE, d/b/a TRIDAIR AEROSPACE MECHANISMS; SOLARAY INDUSTRIES, INC., a California corporation; DASCO ENGINEERING CORPORATION, a California corporation; MAGELLAN AEROSPACE, MIDDLETOWN, an Ohio corporation; HF GROUP, INC., a California corporation; RECREATIONAL VANS, INC., a California corporation; R.G. HARRIS CO., a California Corporation; Robert G. Harris, an individual; EXCELLON TECHNOLOGIES, LLC, a California limited liability company, d/b/a EXCELLON AUTOMATION; TURNING POINT CAPITAL, LLC, an Oregon limited liability company; ESTERLINE TECHNOLOGIES CORPORATION, a Delaware corporation; JOSHMO, LLC, an Oregon limited liability company; WILLIAM J. ADKINS, trustee of the ADKINS FAMILY TRUST, ESTABLISHED APRIL 16, 1991; DCH TL HOLDINGS, LLC, a Delaware limited liability company, d/b/a Torrance Toyota, d/b/a

-2-

Torrance Scion; S.B.L. AUTO, INC. d/b/a
SOUTH BAY LEXUS, a California
corporation; THE UNITED STATES OF
AMERICA, DEPARTMENT OF
DEFENSE, DEPARTMENT OF THE
ARMY; and ROES 1 to 10, inclusive,

Third-Party Defendants.

Defendant, Counter-Claimant, and Third-Party Plaintiff HI-SHEAR
CORPORATION, a Delaware corporation sued and served herein as HI-SHEAR
CORPORATION, a Delaware corporation, d/b/a LISI AEROSPACE ("Hi-Shear")
hereby alleges as follows against the following enumerated Third-Party Defendants:

    a.    EFOC, INC., a Pennsylvania corporation, d/b/a ERIE PRESS
SYSTEMS (*formerly* SHERIDAN GRAY, INC. a California
corporation) ("EFOC");

    b.    The estate of ELISABETH P. FRUDENFELD; the executor,
administrator, or trustee of the estate of ELISABETH P.
FRUDENFELD; the estate of KARL FRUDENFELD; the executor,
administrator, or trustee of the estate of KARL FRUDENFELD;[1] the
trustees of a certain TRUST AGREEMENT DATED NOVEMBER 1,
1977, BETWEEN KARL FRUDENFELD AND ELISABETH P.
FRUDENFELD; KARLA FRUDENFELD, an individual; the trustees
of a certain FREDRICK AND MARGARET SUTTON TRUST;
CRAIG FRUDENFELD, an individual, as custodian for

---

[1] As to Defendants the estate of ELISABETH P. FRUDENFELD; the executor,
administrator, or trustee of the estate of ELISABETH P. FRUDENFELD; the estate
of KARL FRUDENFELD; and the executor, administrator, or trustee of the estate of
KARL FRUDENFELD, and to the extent CERCLA does not preempt California
Code of Civil procedure section 366.2 *et seq.*, Hi-Shear only seeks damages within
the limits and coverage of each of these Defendants' applicable insurance policies.

ALEXANDER FRUDENFELD, AARON FRUDENFELD, and WENDI FRUDENFELD; ALEXANDER FRUDENFELD, an individual; AARON FRUDENFELD, an individual; WENDI FRUDENFELD, an individual; and LAURI COOK, an individual, as custodian for MARINA COOK; MARINA COOK, an individual (collectively the "Frudenfeld Third-Party Defendants");

c.   ARBA, INC., a California corporation ("Arba");

d.   PAUL SIMMONS GOLF COMPANY, a business entity form unknown ("Paul Simmons");

e.   ROBINSON HELICOPTER COMPANY, INCORPORATED, a California corporation ("Robinson");

f.   REXNORD INDUSTRIES, LLC, a Delaware limited liability company, d/b/a REXNORD AEROSPACE, d/b/a TRIDAIR AEROSPACE MECHANISMS (*formerly* REXNORD, INC., a Wisconsin corporation) ("Rexnord");

g.   SOLARAY INDUSTRIES, INC., a California corporation ("Solaray");

h.   DASCO ENGINEERING CORPORATION, a California corporation ("Dasco");

i.   MAGELLAN AEROSPACE, MIDDLETOWN, an Ohio corporation (*formerly* AERONCA, INC., an Ohio corporation) ("Magellan");

j.   HF GROUP, INC., a California corporation (*formerly* HORKEY-MOORE ASSOCIATES) ("HF Group");

k.   RECREATIONAL VANS, INC., a California corporation ("RVI");

l.   R.G. HARRIS CO., a California Corporation ("R.G. Harris Co.") and Robert G. Harris, an individual ("Robert Harris") (collectively the "Harris Third-Party Defendants");

m.   EXCELLON TECHNOLOGIES, LLC, a California limited liability company, d/b/a EXCELLON AUTOMATION ("Excellon");

-4-

HAMRICK & EVANS, LLP

1            TURNING POINT CAPITAL, LLC, an Oregon limited liability

2            company ("Turning Point"); and ESTERLINE TECHNOLOGIES

3            CORPORATION, a Delaware corporation ("Esterline") (collectively

4            the "Excellon Third-Party Defendants");

5     n.     JOSHMO, LLC, an Oregon limited liability company ("JOSHMO");

6     o.     WILLIAM J. ADKINS, trustee of the ADKINS FAMILY TRUST,

7            ESTABLISHED APRIL 16, 1991 ("Adkins");

8     p.     DCH TL HOLDINGS, LLC, a Delaware limited liability company,

9            d/b/a Torrance Toyota, d/b/a Torrance Scion (*formerly* RAAMCO

10            MOTORS, INC., a California corporation) ("DCH");

11     q.     S.B.L. AUTO, INC. d/b/a SOUTH BAY LEXUS, a California

12            corporation ("Lexus");

13     r.     THE UNITED STATES OF AMERICA, DEPARTMENT OF

14            DEFENSE, DEPARTMENT OF THE ARMY (the "Army"); and

15     s.     ROES 1 through 10 (ROES 1 to 10 and all of the above Third-Party

16            Defendants are collectively referred to as "Third-Party Defendants"):

17                 **STATEMENT OF THE ACTION**

18     1.     In response to the environmental contamination claims made against it

19 by Plaintiff and Counter-Defendant the CITY OF TORRANCE (the "City" or

20 "Plaintiff"), and in order to avoid or minimize its alleged liability in connection with

21 such claims, Hi-Shear brings this Third-Party Complaint against the Third-Party

22 Defendants for Contribution and Cost Recovery under the Comprehensive

23 Environmental Response, Compensation and Liability Act of 1980, as amended

24 ("CERCLA"), Declaratory Relief under CERCLA, Contribution under the

25 California Hazardous Substances Act, Declaratory Relief under the California

26 Hazardous Substances Act, Total Indemnity, and Equitable Indemnity (the "Third

27 Party Claims"). The Third-Party Claims arise out of the same transactions,

28 occurrences and set of circumstances as the claims set forth in the City's Complaint

HI-SHEAR CORPORATION'S THIRD-PARTY COMPLAINT

1  in this action.

2      2.     The alleged area of contamination for which Hi-Shear seeks relief is

3  certain real property in and around the north-east corner of the Torrance

4  Airport/Zamperini Field (the "Airport"). This includes approximately 14 acres of

5  real property owned by the City located at 2600 Skypark Drive, Torrance, CA ("Hi-

6  Shear Property"). Hi-Shear has leased the Hi-Shear Property from the City since

7  approximately 1954.

8      3.     Additionally, the alleged area of contamination for which Hi-Shear

9  seeks relief includes adjacent and nearby real property including, but not limited to:

10         a.     Real property located at 2530 Skypark Drive, Torrance, CA (the

11 "Robinson Property"). Hi-Shear is informed and believes, and based thereon alleges,

12 that the City owns this real property and that it either directly leases the Robinson

13 Property to Robinson or that the City leases the Robinson Property to some or all of

14 the Frudenfeld Third-Party Defendants, who then sublease the Robinson Property to

15 Robinson with the City's permission. On information and belief, Robinson may also

16 have various other subtenants currently occupying some or all of the Robinson

17 Property.

18         b.     Real property located at 24701, 24707, and 24747 Crenshaw

19 Boulevard, Torrance, CA (the "Dasco Property"). Hi-Shear is informed and

20 believes, and based thereon alleges, that the City owns this real property and that it

21 either directly leases the Dasco Property to Dasco or that it leases the Dasco

22 Property to some or all of the Frudenfeld Third-Party Defendants, who then sublease

23 the Dasco Property to Dasco with the City's permission, or that the City leases the

24 Dasco Property to some or all of the Frudenfeld Third-Party Defendants, who then

25 sublease the Dasco Property to Robinson, who then sub-subleases the Dasco

26 Property to Dasco with the City's permission.

27 / / /

28 / / /

HAMRICK & EVANS, LLP

-6-

HAMRICK & EVANS, LLP

c.      Real property located at 24751 and 24777 Crenshaw Boulevard, Torrance, CA (the "Lexus Property"). Hi-Shear is informed and believes, and based thereon alleges, that the City owns this real property and that the City either directly leases the Lexus Property to Lexus and DCH, or that the City leases the Lexus Property to Adkins, who then subleases the Lexus Property to Lexus and Toyota with the City's permission.

d.      Real property located just south of the Lexus Property, which formerly housed U.S. Nike Missile Battery #57 (the "Nike Missile Battery Property").  Hi-Shear is informed and believes, and based thereon alleges, that the City owns this real property and currently leases, and leased in the past, at least a portion of this real property to the Army.

4.      All of the real properties referenced above, including the Hi-Shear Property, the Robinson Property, the Dasco Property, the Lexus Property, and/or the Nike Missile Battery Property, are referenced hereinafter as the "Contaminated Properties."

5.      On or about October 23, 2017, the City filed a Complaint ("Complaint") against Hi-Shear setting forth the following causes of action: (1) Response Costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607; (2) Declaratory Relief under CERCLA, 42 U.S.C. § 9613; (3) Abatement of Imminent and Substantial Endangerment, Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*; (4) Response Costs, Indemnity, and Contribution under California Superfund; (5) Breach of the 2004 Lease; (6) Nuisance; (7) Trespass; (8) Waste; (9) Negligence, Negligence Per Se; and (10) Declaratory Relief under California Law.

6.      The City has demanded a jury trial.

7.      The City's Complaint alleges that that the Hi-Shear Property and the other Contaminated Properties have become contaminated by a "release" and/or threatened "release" of a hazardous substance within the meaning of Section

-7-

101(22) of CERCLA, 42 U.S.C. § 9601(22), allegedly consisting primarily of halogenated volatile organic compounds ("HVOCs"), including Trichloroethylene ("TCE") and Perchloroethylene aka Tetrachloroethylene ("PCE"), along with various breakdown chemicals of such HVOCs. The City alleges that this contamination exists on the Hi-Shear Property and that it has migrated, and continues to migrate, from there to adjacent properties, including the Robinson Property, the Dasco Property, and the Lexus Property.

8.     The City alleges that Hi-Shear is liable for this contamination and seeks to recover from Hi-Shear damages, as well as past and future costs, that the City has allegedly incurred (or will incur) in response to purported contamination at the Hi-Shear Property and/or at the Contaminated Properties. Hi-Shear disputes the City's allegations and contends that the City and/or the Third-Party Defendants are liable in whole, or in part, for the alleged contamination, and therefore seeks cost recovery, contribution, indemnity, and declaratory relief against the Third-Party Defendants as set forth herein (and against the City as alleged in Hi-Shear's concurrently filed Counter-Claim).

## **JURISDICTION AND VENUE**

9.     This Court has jurisdiction over the subject matter of this Third-Party Complaint pursuant to (a) 28 U.S.C. § 1331; (b) 28 U.S.C. § 1367; (c) Federal Rule of Civil Procedure, Rule 14; and (d) Section 113(b) of CERCLA, 42 U.S.C. §9613(b). This Court also has subject matter jurisdiction over the claim for declaratory relief by virtue of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure. In addition, this Court has subject matter jurisdiction over the Third-Party Claims brought under state law under the doctrine of pendant jurisdiction set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). The Third-Party Claims under state law arise from the same nucleus of operative facts as the claims under federal law.

10.     Venue for the Third-Party Claims is proper in this District pursuant to

28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) in that the conduct at issue occurred in this District.

## PARTIES

11.     Defendant, Counter-Claimant, and Third-Party Plaintiff, Hi-Shear, is a Delaware corporation, doing business as Lisi Aerospace on the Hi-Shear Property.

12.     Plaintiff and Counter-Defendant, the City, is a municipal corporation located in the County of Los Angeles. The City owns the Hi-Shear Property, and on information and belief, Hi-Shear alleges that the City owns the other properties making up the Contaminated Properties. As such, the City is a "person" and "owner" as defined by CERCLA, 42 U.S.C. § 9601.

13.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant EFOC is a successor corporation to SHERIDAN GRAY, INC., that SHERIDAN GRAY, INC. owned and operated a machine shop at the Robinson Property and the Dasco Property from approximately 1954 to 1966, and that SHERIDAN GRAY, INC. "released" or threatened to "release" hazardous substances at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, EFOC is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

14.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendants the Frudenfeld Third-Party Defendants have leased the Robinson Property and the Dasco Property from the City, and then sub-leased the Robinson Property and the Dasco Property to various other third parties, since approximately 1966 to the present, and that the Frudenfeld Third-Party Defendants had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release," at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, the

HAMRICK & EVANS, LLP

1   Frudenfeld Third-Party Defendants are "persons" and "owners or operators" as

2   defined by CERCLA, 42 U.S.C. § 9601.

3       15.    Hi-Shear is informed and believes, and based thereon alleges, that

4   Third-Party Defendant Arba owned and operated a sheet metal shop at the Robinson

5   Property and the Dasco Property from approximately 1966 to 1972 and that Arba

6   "released" or threatened to "release" hazardous substances at those locations within

7   the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.

8   As such, Arba is a "person" and "owner or operator" as defined by CERCLA, 42

9   U.S.C. § 9601.

10      16.    Hi-Shear is informed and believes, and based thereon alleges, that

11  Third-Party Defendant Paul Simmons owned and operated a business at the

12  Robinson Property and the Dasco Property from approximately 1972 to an unknown

13  date and that Paul Simmons "released" or threatened to "release" hazardous

14  substances at those locations within the meaning of Section 101(22) of CERCLA,

15  42 U.S.C. § 9601(22) during that time. As such, Paul Simmons is a "person" and

16  "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

17      17.    Hi-Shear is informed and believes, and based thereon alleges, that

18  Third-Party Defendant Robinson owned and operated a manufacturing shop at the

19  Robinson Property and the Dasco Property from approximately 1977 to 1995 and

20  that Robinson "released" or threatened to "release" hazardous substances at those

21  locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22)

22  during that time. Hi-Shear is further informed and believes, and based thereon

23  alleges, that Robinson leased the Robinson Property and the Dasco Property from

24  the Frudenfeld Third-Party Defendants and then sub-leased the Robinson Property

25  and the Dasco Property to various other third parties since approximately 1977 to

26  the present and that Robinson had a duty, authority, obligation, and/or right to

27  manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of

28  their various sub-tenants to prevent the "release" or threatened "release" of

-10-

hazardous substances, and to remediate any such "release," at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Robinson is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

18. Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Rexnord is a successor corporation to REXNORD, INC. and that REXNORD, INC. owned and operated a manufacturing shop at the Robinson Property and the Dasco Property from approximately 1985 to 1995 and that REXNORD, INC. "released" or threatened to "release" hazardous substances at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Rexnord is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

19. Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Solaray owned and operated a business at the Dasco Property from approximately 1962 to an unknown date and that Solaray "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Solaray is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

20. Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Dasco owned and operated a business at the Dasco Property from approximately 1995 to the present and that Dasco "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Dasco is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

21. Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Magellan is a successor corporation to AERONCA, INC. and that AERONCA, INC. owned and operated a aerospace manufacturing shop at the

HAMRICK & EVANS, LLP

Lexus Property from approximately 1954 to 1979 and that AERONCA, INC. "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Magellan is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

22.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant HF Group is a successor corporation to HORKEY-MOORE ASSOCIATES and that HORKEY-MOORE ASSOCIATES owned and operated a manufacturing business at the Lexus Property from approximately 1954 to 1960 and that HORKEY-MOORE ASSOCIATES "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, HF Group is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

23.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant RVI owned and operated an automotive business at the Lexus Property from approximately 1977 to an unknown date and that RVI "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, RVI is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

24.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Harris Third-Party Defendants leased the Lexus Property from the City, and then sub-leased the Lexus Property to various other third parties, from approximately 1977 to an unknown date and that the Harris Third-Party Defendants had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release," at that location within the meaning of Section

HAMRICK & EVANS, LLP

-12-

1   101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, the Harris
2   Third-Party Defendants are "persons" and "owners or operators" as defined by
3   CERCLA, 42 U.S.C. § 9601.

4        25.    Hi-Shear is informed and believes, and based thereon alleges, that
5   Third-Party Defendant Excellon owned and operated a manufacturing business at
6   the Lexus Property from approximately 1979 to 2003 and that Excellon "released"
7   or threatened to "release" hazardous substances at that location within the meaning
8   of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. Hi-Shear is
9   further informed and believes, and based thereon alleges, that Third-Party
10  Defendants Turning Point and Esterline are successor corporations to Excellon. As
11  such, the Excellon Third-Party Defendants are "persons" and "owners or operators"
12  as defined by CERCLA, 42 U.S.C. § 9601.

13       26.    Hi-Shear is informed and believes, and based thereon alleges, that
14  Third-Party Defendant JOSHMO leased the Lexus Property from the City, and then
15  sub-leased the Lexus Property to various other third parties, from approximately
16  2003 to 2006 and that JOSHMO had a duty, authority, obligation, and/or right to
17  manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of
18  its various sub-tenants to prevent the "release" or threatened "release" of hazardous
19  substances, and to remediate any such "release," at that location within the meaning
20  of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such,
21  JOSHMO is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C.
22  § 9601.

23       27.    Hi-Shear is informed and believes, and based thereon alleges, that
24  Third-Party Defendant Adkins leased the Lexus Property from the City, and then
25  sub-leased the Lexus Property to various other third parties, from approximately
26  2004 to the present and that Adkins had a duty, authority, obligation, and/or right to
27  manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of
28  their various sub-tenants to prevent the "release" or threatened "release" of

HAMRICK & EVANS, LLP

hazardous substances, and to remediate any such "release," at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Adkins is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

28.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant DCH is a successor corporation of RAAMCO MOTORS, INC. and that RAAMCO MOTORS, INC. and DCH owned and operated an automobile business at the Lexus Property from approximately 2005 to the present and that RAAMCO MOTORS, INC. and/or DCH "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, DCH is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

29.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Lexus owned and operated an automobile business at the Lexus Property from approximately 2007 to the present and that Lexus "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Lexus is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

30.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant the Army owned and operated a Nike Missile Battery at the Nike Missile Battery Property from at least 1955 to the present and that the Army "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, the Army is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

31.     Hi-Shear is presently unaware of the true names and capacities of the Third-Party Defendants sued herein as Roes 1-10 and therefore sues them by these

HAMRICK & EVANS, LLP

-14-

fictitious names. Hi-Shear will amend its Third-Party Complaint to allege their true names and capacities when they are ascertained. Hi-Shear is informed and believes, and based thereon alleges, that each of the fictitiously named Third-Party Defendants is responsible in some manner for the occurrences herein alleged, and that Hi-Shear's damages were proximately caused by their conduct.

## FIRST CLAIM FOR RELIEF

### Contribution under CERCLA, 42 U.S.C. § 9613(f)

### (Against all Third-Party Defendants and ROES 1-10)

32.    Hi-Shear repeats the allegations contained in paragraphs 1 through 31 inclusive as though fully set forth herein.

33.    Hi-Shear's potential liability in this action arises from the City's allegations that Hi-Shear, by virtue of operating its business on the Hi-Shear Property, has released hazardous substances into the environment that have allegedly contaminated the Hi-Shear Property and have allegedly migrated from the Hi-Shear Property to the other Contaminated Properties.

34.    Hi-Shear is afforded the right under section 113(f) of CERCLA, 42 U.S.C. § 9613(f), to seek contribution from "any other party who is liable or potentially liable" under section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for any amounts Hi-Shear paid or incurred in excess of its equitable share of liability related to the investigation and remediation of any and all disposals and/or releases of hazardous substances at or about the Contaminated Properties. On that basis, Hi-Shear asserts its right of contribution against each and every Third-Party Defendant in connection with the contamination alleged in the City's Complaint in this action.

35.    Each of the Contaminated Properties qualify as a "facility" pursuant to 42 U.S.C. § 9601.

36.    Hi-Shear is informed and believes, and based thereon alleges, that each of the Third-Party Defendants either:

        a.    "released" or threatened to "release" hazardous substances at

-15-

one or more of the Contaminated Properties within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during their ownership and/or occupation of said location; and/or

b.  owned or leased one or more of the Contaminated Properties and had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various tenants and/or sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) at said location.

37.    Therefore, each of the Third-Party Defendants is potentially liable under § 107(a) for any costs of response incurred by Hi-Shear for the investigation and remediation of any and all disposals and/or releases of hazardous substances at or about the Contaminated Properties.

38.    Hi-Shear is thus entitled to contribution from each of the Third-Party Defendants under § 113(f) of CERCLA, 42 U.S.C. § 9613(f) for any and all costs, including but not limited to, assessment, investigation, evaluation, monitoring, mitigation, removal, and/or remedial action costs and/or enforcement costs, attorney's fees, consultant fees, and related costs, together with interest and court costs, incurred by Hi-Shear in excess of Hi-Shear's proportionate liability.

## SECOND CLAIM FOR RELIEF

### Cost Recovery under CERCLA, 42 U.S.C. § 9607(a)

### (Against all Third-Party Defendants and ROES 1-10)

39.    Hi-Shear repeats the allegations contained in paragraphs 1 through 38 inclusive as though fully set forth herein.

40.    Hi-Shear's potential liability in this action arises from the City's

-16-

HAMRICK & EVANS, LLP

allegations that Hi-Shear, by virtue of operating its business on the Hi-Shear Property, has released hazardous substances into the environment that have allegedly contaminated the Hi-Shear Property and have allegedly migrated from the Hi-Shear Property to the other Contaminated Properties.

41.   Each of the Contaminated Properties qualify as a "facility" pursuant to 42 U.S.C. § 9601.

42.   Hi-Shear is informed and believes, and based thereon alleges, that each of the Third-Party Defendants either:

      a.   "released" or threatened to "release" hazardous substances at one or more of the Contaminated Properties within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during their ownership and/or occupation of said location; and/or

      b.   owned or leased one or more of the Contaminated Properties and had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various tenants and/or sub-tenants to prevent the "release" or threatened "release" of hazardous substance, and to remediate any such "release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) at said location.

43.   Thus, each of the Third-Party Defendants is an "owner or operator" at the time when hazardous materials were allegedly released on some or all of the Contaminated Properties and therefore each of the Third-Party Defendants is a "responsible," "liable" and/or "covered" party pursuant to 42 U.S.C. § 9607.

44.   Hi-Shear has incurred, and will continue to incur, response costs in relation to the investigation and remediation of any and all disposals and/or releases of hazardous substances at or about the Hi-Shear Property and the Contaminated

-17-

Properties. These response costs are both necessary and consistent with the National Contingency Plan and were incurred in accordance with the applicable CERCLA requirements. These response costs include, but are not limited to, assessment, investigation, evaluation, monitoring, mitigation, removal, and/or remedial action costs and/or enforcement costs, attorney's fees, consultant fees, and related costs, all of which are and will continue to be necessary costs of response consistent with the National Contingency Plan.

45. Based on the above, Hi-Shear is entitled to reimbursement for any and all such past, present, and/or future response costs incurred prior to trial, together with interest thereon, with each of the Third-Party Defendants being strictly liable to Hi-Shear for all such amounts under CERCLA.

## THIRD CLAIM FOR RELIEF

### Declaratory Relief under CERCLA, 42 U.S.C. § 9613

### (Against all Third-Party Defendants and ROES 1-10)

46. Hi-Shear repeats the allegations contained in paragraphs 1 through 45 inclusive as though fully set forth herein.

47. Hi-Shear prays for a declaratory judgment, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. §§ 9607 and 9613, for the purpose of determining a question of actual controversy between and among the parties, as appears above and as hereinafter more fully appears.

48. An actual controversy exists between Hi-Shear on the one hand and each of the Third-Party Defendants on the other hand, regarding their respective rights and obligations concerning necessary response costs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and concerning the parties' respective liability for contribution under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

49. Hi-Shear asserts that each of the Third-Party Defendants either:

    a. "released" or threatened to "release" hazardous substances at one or more of the Contaminated Properties within the

-18-

HAMRICK & EVANS, LLP

meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during their ownership and/or occupation of said location; and/or

b.    owned or leased one or more of the Contaminated Properties and had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various tenants and/or sub-tenants to prevent the "release" or threatened "release" of hazardous substance, and to remediate any such "release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) at said location.

50.    Thus, each of the Third-Party Defendants is an "owner or operator" at the time when hazardous materials were allegedly released on some or all of the Contaminated Properties and therefore each of the Third-Party Defendants is responsible for all response costs regarding alleged contamination at or around the Contaminated Sites under Section 107(a) of CERCLA, 42 U.S.C. 9607(a) and for any amounts paid by Hi-Shear over its equitable share of liability pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

51.    Hi-Shear denies that it is responsible for any investigation, testing, removal, other remediation or monitoring of the alleged hazardous substances at or around the Contaminated Properties.

52.    Hi-Shear desires a judicial determination of the rights and duties of Hi-Shear, on the one hand, and each of the Third-Party Defendants, on the other hand, with respect to the respective rights, obligations, and duties related to the removal, remediation, cleanup, evaluation, investigation, monitoring, assessment, and/or mitigation of the alleged contamination at the Contaminated Properties.

53.    Hi-Shear therefore requests that this Court enter a declaratory judgment declaring that each of the Third-Party Defendants is liable for all or part of the costs

-19-

HAMRICK & EVANS, LLP

plus interest of past, present, and future actions to be taken by Hi-Shear or other persons consistent with the National Contingency Plan to respond to releases or threatened releases at or proximately caused by conditions that existed, do exist, or will exist at or in connection with the Contaminated Properties; for any past or future damages arising from the Contaminated Properties; and if Hi-Shear should be found liable for any part of the claims of the City as set forth in its Complaint in this action, Hi-Shear requests that this Court enter a declaratory judgment that Hi-Shear deposited no hazardous substances, hazardous waste, and/or petroleum products at the Contaminated Properties and that, therefore, Hi-Shear would only be liable for nominal damages, if any.

54.     Such a judicial determination setting forth the parties' respective rights, obligations, and duties is necessary in order for the respective parties to ascertain their respective rights, obligations, and duties and to avoid the multiplicity of actions that would result if Hi-Shear were forced to proceed against each of the Third-Party Defendants after each additional increment of response cost is incurred over Hi-Shear's equitable portion of liability.

## FOURTH CLAIM FOR RELIEF

**Contribution under Carpenter-Presley-Tanner Hazardous Substances Act,**

**Cal. Health & Safety Code Sections 25300 *et seq.***

**(Against all Third-Party Defendants and ROES 1-10)**

55.     Hi-Shear repeats the allegations contained in paragraphs 1 through 54 inclusive as though fully set forth herein.

56.     The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health and Safety Code §§ 25300-25395, was enacted to encourage expedient cleanup of contaminated properties. To provide such encouragement, the legislature included the statutory right of indemnification in favor of those parties who clean up the properties against those parties who are liable for the contamination. Responsible parties include current and past owners and operators of

HAMRICK & EVANS, LLP

a facility where contamination is located.

57.    The City owns the Contaminated Properties.

58.    The City alleges that the Hi-Shear Property and the other Contaminated Properties have become contaminated with hazardous substances and seeks to impose liability on Hi-Shear for that purported contamination.

59.    Hi-Shear alleges that each of the Third-Party Defendants, by their acts and omissions, or by the acts and omissions of their predecessors, representatives, affiliates, employees, agents, lessees, and/or vendors, caused or contributed to the purported contamination of the Contaminated Properties.

60.    Hi-Shear alleges that each of the Third-Party Defendants is thus statutorily liable for all costs that Hi-Shear has incurred, and will continue to incur, in response to purported contamination at the Contaminated Properties, including the cost to investigate and remediate the purported environmental conditions existing at the Contaminated Properties.

61.    Hi-Shear has expended or will expend, and will continue to expend, funds for investigation, remediation and monitoring activities required by state, federal and administrative authorities.

62.    The liability of each of the Third-Party Defendants has not been determined or discharged by arbitration under California Health and Safety Code § 25356.6.

63.    Hi-Shear alleges that it is entitled to contribution and indemnification, in whole or in part, for all costs incurred or to be incurred for compliance with state, federal and/or administrative instructions, based on Health and Safety Code § 25363.

/ / /

/ / /

/ / /

/ / /

-21-

HAMRICK & EVANS, LLP

**FIFTH CLAIM FOR RELIEF**

**Declaratory Relief under Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300 *et seq.***

**(Against all Third-Party Defendants and ROES 1-10)**

64.　Hi-Shear repeats the allegations contained in paragraphs 1 through 63 inclusive as though fully set forth herein.

65.　An actual controversy exists between Hi-Shear on the one hand and each of the Third-Party Defendants on the other hand, regarding their respective rights and obligations concerning necessary response costs under Health and Safety Code Section 25363(e).

66.　Hi-Shear asserts that each of the Third-Party Defendants, as current or prior owner and operators of the Contaminated Properties, is responsible for all response costs regarding alleged contamination at or around the Contaminated Properties. Hi-Shear denies that it is responsible for any investigation, testing, removal, disposal, other remediation or monitoring of the alleged hazardous substances at or around the Contaminated Properties.

67.　Hi-Shear desires a judicial determination of the rights and duties of Hi-Shear, on the one hand, and each of Third-Party Defendants, on the other hand, with respect to their respective rights, obligations, and duties related to the removal, remediation, cleanup, evaluation, investigation, monitoring, assessment, and/or mitigation of the alleged contamination at the Contaminated Properties.

68.　Hi-Shear therefore requests that this Court enter a declaratory judgment declaring that each of the Third-Party Defendants is liable for all or part of the costs plus interest of past, present, and future actions to be taken by Hi-Shear or other persons to respond to releases or threatened releases at, or proximately caused by conditions that existed, do exist, or will exist at or in connection with, the Contaminated Properties; and for any past or future damages arising from the Contaminated Properties.

HI-SHEAR CORPORATION'S THIRD-PARTY COMPLAINT

69.     Such a judicial determination setting forth the parties' respective rights, obligations, and duties is necessary in order for the respective parties to ascertain their respective rights, obligations, and duties and to avoid the multiplicity of actions that would result if Hi-Shear and/or each of the Third-Party Defendants were forced to proceed against each other after each additional increment of response cost is incurred over each party's respective equitable portion of liability.

## SIXTH CLAIM FOR RELIEF

### Total Indemnity

### (Against all Third-Party Defendants and ROES 1-10)

70.     Hi-Shear repeats the allegations contained in paragraphs 1 through 69 inclusive as though fully set forth herein.

71.     By reason of the foregoing, Hi-Shear alleges that if it is held responsible for any of the claims being asserted against it in this action, then Hi-Shear is entitled to total indemnity from each of the Third-Party Defendants for any and all damages Hi-Shear incurs from any such liability.

## SEVENTH CLAIM FOR RELIEF

### Equitable Indemnity

### (Against all Third-Party Defendants and ROES 1-10)

72.     Hi-Shear repeats the allegations contained in paragraphs 1 through 71 inclusive as though fully set forth herein.

73.     Hi-Shear alleges that, in equity and good conscience, if the City or any other third-party recovers against Hi-Shear, then Hi-Shear is entitled to equitable indemnity, apportionment of liability, and contribution from each of the Third-Party Defendants according to their respective fault, for the injuries and damages allegedly sustained by the City, if any, by way of sums paid by Hi-Shear in settlement, or in the alternative, any judgments rendered against Hi-Shear in the action herein.

74.     Hi-Shear alleges that it will be compelled by the operation of applicable

-23-

HAMRICK & EVANS, LLP

Federal and State laws to incur necessary response costs consistent with the National Contingency Plan and other abatement costs to remove, remediate, cleanup, evaluate, investigate, monitor, assess, and/or mitigate the alleged contamination from the Contaminated Properties, which are owned by the City, and to take other response actions necessary to protect public health and to enforce the liability schemes set forth in CERCLA and in State law.

75.    Hi-Shear alleges that each of the Third-Party Defendants is liable in whole or in part for the alleged contamination at the Contaminated Properties as a result of each of the Third-Party Defendants' current or prior ownership, management, and oversight of the Contaminated Properties, including but not limited to allowing, failing to stop, and/or causing the continued alleged release of hazardous substances into the environment in or around the Contaminated Properties, and as a result of each of the Third-Party Defendants' current or prior operations at the Contaminated Properties, including but not limited to their release of hazardous materials into the environment in or around the Contaminated Properties.

76.    Hi-Shear therefore alleges that each Third-Party Defendant is bound and obligated, to indemnify, reimburse, and hold harmless Hi-Shear for and against any and all response costs and any other costs heretofore or hereafter incurred by Hi-Shear in responding to, investigating,  and remediating the purported contamination at or about the Contaminated Properties, including attorneys fees, which will be incurred as a result of Hi-Shear's investigation and remediation of the environmental conditions at or about the Contaminated Properties.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Hi-Shear prays for judgment as follows:

1.    Against each of the Third-Party Defendants for contribution under CERCLA, as more fully set forth in Hi-Shear's first cause of action;

2.    Against each of the Third-Party Defendants for cost recovery under CERCLA, as more fully set forth in Hi-Shear's second cause of action;

3.      Against each of the Third-Party Defendants for a judicial declaration under CERCLA that each of the Third-Party Defendants is liable for all past and future response costs, plus interest, incurred by Hi-Shear in connection with the Contaminated Properties, as more fully set forth in Hi-Shear's third cause of action;

4.      Against each of the Third-Party Defendants for contribution under the Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300 *et seq.*, as more fully set forth in Hi-Shear's fourth cause of action;

5.      Against each of the Third-Party Defendants for a judicial declaration under the Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300 *et seq.* that each of the Third-Party Defendants are liable for all past and future response costs incurred in connection with the Contaminated Properties, as more fully set forth in Hi-Shear's fifth cause of action;

6.      Against each of the Third-Party Defendants for total indemnity, as more fully set forth in Hi-Shear's sixth cause of action;

7.      Against each of the Third-Party Defendants for equitable indemnity, as more fully set forth in Hi-Shear's seventh cause of action;

8.      For costs of suit and attorneys' fees incurred by Hi-Shear in this action as permitted by statute; and

9.      For such other and further relief as the Court may deem just and proper.

DATED:  December 22, 2017          HAMRICK & EVANS, LLP

By:   _/s/ David L. Evans_
          DAVID L. EVANS
          THOMAS P. SCHMIDT
          JEFF POOLE
          Attorneys for Defendant, Counter-
          Claimant, and Third-Party Plaintiff HI-
          SHEAR CORPORATION

-25-

1

## **DEMAND FOR JURY TRIAL**

2

        Hi-Shear demands a jury trial on all claims and matters which it is entitled to

3

a trial by jury.

4

5

DATED:  December 22, 2017          HAMRICK & EVANS, LLP

6

7

By:    /s/ *David L. Evans*

8

     DAVID L. EVANS
     THOMAS P. SCHMIDT

9

     JEFF POOLE

10

     Attorneys for Defendant, Counter-
     Claimant, and Third-Party Plaintiff HI-
     SHEAR CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAMRICK & EVANS, LLP

HI-SHEAR CORPORATION'S THIRD-PARTY COMPLAINT

## CERTIFICATE OF SERVICE

I certify and state that I am now and at all times herein mentioned was, a citizen of the United States, over the age of eighteen (18) years, a resident of the County of Los Angeles, and not a party to the within action or cause. My business address is Hamrick & Evans, LLP, 2600 West Olive Avenue, Suite 1020, Burbank, California 91505.

I hereby certify that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I further certify that on December 22, 2017, I caused to be served the copies of the attached:

**HI-SHEAR CORPORATION'S THIRD-PARTY COMPLAINT FOR:**
**1.    CONTRIBUTION UNDER CERCLA**
**2.    COST RECOVERY UNDER CERCLA**
**3.    DECLARATORY RELIEF UNDER CERCLA**
**4.    CONTRIBUTION UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**
**5.    DECLARATORY RELIEF UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**
**6.    TOTAL INDEMNITY**
**7.    EQUITABLE INDEMNITY**

on the parties in said action as follows:

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be serve by mail or by any other means permitted by the court rules.

☒    (Federal)  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on December 22, 2017, at Burbank, California.

/s/ Heather Martindale
_____
Heather Martindale