# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF TORRANCE,<br>    Plaintiff,<br><br>        v.<br><br>HI-SHEAR CORPORATION,<br>    Defendant. | No. CV 17-7732 DSF (JPRx)<br><br>Order GRANTING Motions to Dismiss Third-Party Complaint (Dkts. 118, 126) |
| HI-SHEAR CORPORATION,<br>    Counterclaimant,<br><br>        v.<br><br>CITY OF TORRANCE,<br>    Counter-Defendant. | |
| HI-SHEAR CORPORATION,<br>    Third-Party Plaintiff,<br><br>        v.<br><br>EFOC, Inc., et al.,<br>    Third-Party Defendants. | |

## I. INTRODUCTION

In response to environmental claims brought by the City of Torrance, Hi-Shear Corporation filed a Third-Party Complaint (TPC) against numerous parties, seeking contribution, cost recovery, and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA); contribution and declaratory relief under California's Carpenter-Presley-Tanner Hazardous Substances Account Act (HSAA); and indemnity. Hi-Shear seeks relief for an alleged area of contamination that includes approximately 14 acres of real property owned by the City near the Torrance Airport that Hi-Shear has leased from the City since 1954, as well as certain adjacent properties allegedly contributing to the area of contamination. Dkt. 14 (TPC) ¶¶ 2-3.

Before the Court are the separate motions to dismiss the TPC of Third-Party Defendants DCH TL Holdings (Dkt. 118), and the United States of America on behalf of the Department of Defense and the Department of Army (Dkt. 126). The Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, DCH's and the United States' motions are GRANTED with leave to amend.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (ellipsis in original; internal quotation marks omitted). But Rule 8 "requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson, 551 U.S. at 94. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original; citation and internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

### III. DISCUSSION

### A. DCH's Motion to Dismiss

Among the properties for which Hi-Shear seeks relief are real properties located at 24751 and 24777 Crenshaw Boulevard, Torrance, California (together, the Lexus Property). TPC ¶ 3(c). The Lexus Property, which is owned by the City and leased to Lexus and DCH, has been "contaminated by a 'release' and/or threatened 'release' of hazardous substance within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), allegedly consisting primarily of halogenated volatile organic compounds ('HVOCs'), including Trichloroethylene ('TCE') and

3

Perchloroethylene aka Tetrachloroethylene ('PCE'), along with various breakdown chemicals of such HVOCs." Id. ¶ 7. DCH is a successor corporation of Raamco Motors, Inc., and Raamco and DCH owned and operated an automobile business at the Lexus Property from 2005 to the present. Id. ¶ 28. Raamco and/or DCH "released" or "threatened to release" hazardous substances at that location. Id.

DCH's primary assertion is that Hi-Shear has failed to properly allege DCH is an "operator" under CERCLA.[1] As relevant here, CERCLA imposes liability on "(1) the owner and operator of . . . a facility," 42 U.S.C. § 9607(a)(1), and "(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of[.]" Id. § 9607(a)(2).[2] CERCLA defines operator as "any person . . . operating" a facility.

The Court is not persuaded by DCH's argument that "[w]ithout . . . control [over the contamination], there can be no liability" under section 9607(a)(1). Reply at 6. Despite DCH's claim to contrary, that formulation improperly implies a causation requirement.

The parties disagree regarding the interpretation of section 9607(a)(1) in light of United States v. Bestfoods, 524 U.S. 51 (1998) – which focused solely on the liability of an operator under section 9607(a)(2). But here the Court must analyze section 9607(a)(1) – a section with very different language. This appears

---

[1] DCH notes that Hi-Shear has not alleged "owner" liability under CERCLA, because the TPC alleges only that DCH is a lessee of the Lexus Property. Opp'n at 5 n.4. Hi-Shear does not directly respond to this, and does not argue it has sufficiently pleaded DCH is an owner.

[2] Responsible parties under the HSAA are the same as those liable under CERCLA. Cal. Health & Safety Code § 25323.5(a).

to be a case of first impression post-<u>Bestfoods</u>, as the parties have not cited a Circuit case directly discussing the issue – and the Court has found none.

The Court finds the pre-<u>Bestfoods</u> analysis in <u>State of New York v. Shore Realty Corp.</u>, 759 F.2d 1032 (2d Cir. 1985) remains valid after <u>Bestfoods</u> and resolves the dispute here. As the Second Circuit explained:

> Section 9607(a)(1) applies to all current owners and operators, while section 9607(a)(2) primarily covers prior owners and operators. Moreover, section 9607(a)(2)'s scope is more limited than that of section 9607(a)(1). Prior owners and operators are liable only if they owned or operated the facility "at the time of disposal of any hazardous substance"; this limitation does not apply to current owners . . . .
>
> Interpreting section 9607(a)(1) as including a causation requirement makes superfluous the affirmative defenses provided in section 9607(b), each of which carves out from liability an exception based on causation. Without a clear congressional command otherwise, we will not construe a statute in any way that makes some of its provisions surplusage.

<u>Shore Realty</u>, 759 F.2d at 1044.[3]

---

[3] The Court also agrees with the Second Circuit that reading a causation requirement into section 9607(a)(1) would create a loophole at odds with CERCLA's purpose:

> [I]f the current owner of a site could avoid liability merely by having purchased the site after chemical dumping had ceased, waste sites certainly would be sold, following the cessation of dumping, to new owners who could avoid the liability otherwise required by CERCLA. Congress had well in mind that persons who dump or store hazardous waste sometimes cannot be located or may be deceased or judgment-proof.

Although CERCLA imposes strict liability, TPC's bare allegation that DCH is a current "owner and operator" of a business on the allegedly contaminating or contaminated property is insufficient. See Bestfoods, 524 U.S. at 66-67; Iqbal, 556 U.S. at 678 (a complaint must do more than "tender[] naked assertion[s] devoid of further factual enhancement."). DCH's motion to dismiss the First through Fifth Claims for Relief against it is GRANTED with leave to amend.

DCH also asserts Hi-Shear's indemnity claims fail because the TPC fails to plead facts establishing DCH's conduct was a substantial factor in causing the contamination harm. This misstates the pleading burden. See Great W. Drywall, Inc. v. Interstate Fire & Cas. Co., 161 Cal. App. 4th 1033, 1041 (2008) ("The elements of a cause of action for indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible.") (citation omitted). Hi-Shear does not address this argument in its opposition, however, and lack of opposition is deemed to be consent. DCH's motion to dismiss the Sixth and Seventh Claims for Relief against it is GRANTED with leave to amend.

## B. United States' Motion to Dismiss

Hi-Shear seeks relief related to real property located just south of the Lexus Property, which formerly housed U.S. Nike Missile Battery #57 (the Nike Property). TPC ¶ 3(d). Hi-Shear alleges the City owns this real property and leases, and leased in the past, at least a portion of the property to the Department of Defense and the Department of Army (together, the United States). Id. The United States allegedly owned and operated a

---

Shore Realty, 759 F.2d at 1045 (citing S.Rep. No. 848, 96th Cong., 2d Sess. 34 (1980)).

Nike missile battery at the property from at least 1955 to the present, and has "'released' or threatened to 'release' hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, the [United States] is a 'person' and 'owner or operator' as defined by CERCLA, 42 U.S.C. § 9601." Id. ¶ 30.

The United States moves to dismiss (1) the CERCLA claims on the basis that Hi-Shear cannot bring a claim under section 107 and for insufficient factual support; and (2) the state law claims—both the HSAA claims and the indemnity claims—because they are barred by federal sovereign immunity.

### 1. State Law Claims

Hi-Shear does not oppose dismissal of the state law claims based on the United States' representation that it stopped operating the Nike Property in the 1970s. Opp'n at 14-15. The United States' motion to dismiss the Fourth through Seventh Claims for Relief is GRANTED.

### 2. Whether Hi-Shear May Seek Both Recovery Costs and Contribution under CERCLA

The United States argues that as a potentially responsible party (PRP), Hi-Shear is limited to seeking contribution under section 113(f) of CERCLA (First Claim for Relief), and may not also seek cost recovery under section 107(a) of CERCLA (Second Claim for Relief).

"Congress enacted CERCLA in 1980 with two goals in mind: (i) to encourage the 'expeditious and efficient cleanup of hazardous waste sites,' and (ii) to ensure that those responsible for hazardous waste contamination pay for the cleanup." Asarco LLC v. Atl. Richfield Co., 866 F.3d 1108, 1115 (9th Cir. 2017) (citations omitted). "One of the ways CERCLA achieves these goals is by

7

allowing a party who remediates a hazardous waste site to obtain reimbursement of its expenses from those responsible for the pollution." Whittaker Corp. v. United States, 825 F.3d 1002, 1006 (9th Cir. 2016). As relevant here, "CERCLA provides two mechanisms for private parties to recover their environmental cleanup expenses from other parties." Id. Section 107(a) allows parties to bring 'cost recovery' actions against polluters for "any . . . necessary costs of response incurred" and "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from [] a release." 42 U.S.C. § 9607(a). And section 113(f) allows a party to "seek contribution from any other person who is liable or potentially liable under [§ 107(a)] . . . during or following any civil action." 42 U.S.C. § 9613(f)(1). As the Supreme Court has explained:

> [T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances." Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover **the same expenses** under § 107(a).

United States v. Atl. Research Corp., 551 U.S. 128, 139 (2007) (internal citations omitted; emphasis added). In other words, "[a]

8

party uses contribution to get reimbursed for being made to pay more than its fair share to someone else, and uses cost recovery to get reimbursed for its own voluntary cleanup costs." Whittaker, 825 F.3d at 1007.

Hi-Shear has been sued by the City for cost recovery under section 107 of CERCLA. See Dkt. 1 (Compl.) ¶¶ 20-27. For both its contribution and cost recovery claims in the TPC, Hi-Shear states that the "potential liability in this action arises from the City['s] allegations that Hi-Shear . . . has released hazardous substances into the environment that have allegedly contaminated the Hi-Shear [facility] and have allegedly migrated . . . to the other Contaminated Properties." TPC ¶¶ 33, 40. But as Hi-Shear explains in its opposition, it seeks two potentially distinct remedies: (1) in the First Claim for Relief, it seeks contribution under section 113(f) for any amounts it ultimately may owe the City for costs <u>the City incurred</u> investigating or remediating environmental contamination at the properties; and (2) in the Second Claim for Relief, it seeks recovery under section 107(a) for costs <u>it has incurred</u>, or will incur, to investigate and remediate the environmental contamination. Opp'n at 9; TPC ¶¶ 34, 44, 45. At this stage of the proceeding, before the facts have been developed, Hi-Shear may proceed with both claims.[4] See Whittaker, 825 F.3d at 1007; see also Astiana v. Hain Celestial

---

[4] The United States relies on Asarco to support its position that Hi-Shear may not bring both recovery cost and contribution claims after being sued itself for recovery costs. That case held that "a PRP that incurs its own response costs pursuant to a settlement agreement may only bring a claim for contribution." 866 F.3d at 1117. Here, the parties have not entered into a settlement agreement, and it is possible Hi-Shear has or will incur voluntary costs separate from any liability to the City. See Atl. Research, 551 U.S. at 139 n.6 ("[C]osts incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f).").

9

Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (duplicative cause of action does not warrant dismissal at the motion to dismiss stage). The United States' motion to dismiss the Second and Third Claims for Relief on this basis is DENIED.

### 3. Whether Hi-Shear Has Stated Plausible CERCLA Claims

The Court agrees with the United States that Hi-Shear must plead a nexus between a hazardous substance release at the Nike Property and the contaminated properties, e.g., by alleging migration of a hazardous substance from the Nike Property.  See, e.g., Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., No. 09-4485 JF, 2010 WL 689940, at *4 (N.D. Cal. Feb. 23, 2010) (granting motion to dismiss where plaintiff "fail[ed] to allege any facts that could support an inference connecting the gas station, which is not alleged to have been located within the boundaries of the Site, to the clean-up on the parcel . . . .").  Hi-Shear has failed to plead such a nexus.

The Court also finds inadequate Hi-Shear's allegations related to necessary costs—which as the United States points out are not tied to the Nike Property.  See Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 870 (9th Cir. 2001) (among other things, party seeking cost recovery must demonstrate that the "'release' or 'threatened release' has caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan'") (quoting 3550 Stevens Creek Assocs. v. Barclays Bank of California, 915 F.2d 1355, 1358 (9th Cir. 1990)).  The TPC alleges Hi-Shear's "response costs include, but are not limited to, assessment, investigation, evaluation, monitoring, mitigation, removal, and/or remedial action costs and/or enforcement costs, attorney's fees, consultant fees, and related costs . . . .").  TPC ¶ 44.  This is insufficient.  See San Diego Unified Port Dist. v. Monsanto Co., No. 15-CV-578-WQH, 2018

10

WL 626315, at *7 (S.D. Cal. Jan. 30, 2018) (finding more detailed allegations insufficient). Hi-Shear must allege specific "incurred response costs necessary and addressed to the actual containment and cleanup of hazardous releases under CERCLA." Id.

Finally, Hi-Shear has not adequately pleaded the United States was an "owner" or "operator" under CERCLA. Hi-Shear concedes in its opposition that the United States is not currently an operator, but argues the TPC sufficiently alleges the United States is a former operator. As discussed above, under Bestfoods, to be liable as an operator, the party must have "manage[d], direct[ed], or conduct[ed] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Bestfoods, 524 U.S. at 66-67. The conclusory allegations that the United States was an owner or operator as defined by CERCLA will not do. See Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

The United States' motion to dismiss the First through Third Causes of Action is GRANTED with leave to amend.

## IV. CONCLUSION

DCH's and the United States' motions to dismiss are GRANTED with leave to amend. An amended complaint may be filed and served no later than August 13, 2018. Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a separate, properly noticed motion. Plaintiff must provide a redlined version of the amended complaint to the chambers email.

IT IS SO ORDERED.

Date: July 11, 2018

_____

Dale S. Fischer
United States District Judge

12