David L. Evans (State Bar No. 155634)
*dlevans@hamricklaw.com*
Thomas P. Schmidt (State Bar No. 157831)
*tschmidt@hamricklaw.com*
Jeff Poole (State Bar No. 291783)
*jpoole@hamricklaw.com*
HAMRICK & EVANS, LLP
2600 West Olive Avenue, Suite 1020
Burbank, California 91505
Telephone No.: (818) 763-5292
Fax No.: (818) 763-2308

Attorneys for Defendant, Counter-
Claimant, Third-Party Plaintiff, and
Third-Party Defendant
HI-SHEAR CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CITY OF TORRANCE,<br><br>            Plaintiff,<br><br>      v.<br><br>HI-SHEAR CORPORATION, a Delaware corporation, d/b/a LISI AEROSPACE,<br><br>            Defendant. | Case No.: 2:17-cv-07732-DSF-JPR<br>(*Case assigned to Hon. Dale S. Fischer*)<br><br>**HI-SHEAR CORPORATION'S THIRD AMENDED THIRD-PARTY COMPLAINT FOR:**<br><br>**1. CONTRIBUTION UNDER CERCLA**<br>**2. COST RECOVERY UNDER CERCLA**<br>**3. DECLARATORY RELIEF UNDER CERCLA**<br>**4. CONTRIBUTION UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**<br>**5. DECLARATORY RELIEF UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**<br>**6. TOTAL INDEMNITY**<br>**7. EQUITABLE INDEMNITY** |
| HI-SHEAR CORPORATION,<br><br>            Counter-Claimant,<br><br>      v.<br><br>CITY OF TORRANCE,<br><br>            Counter-Defendant. | |
| HI-SHEAR CORPORATION,<br><br>            Third-Party Plaintiff,<br><br>      v.<br><br>SHERIDAN-GRAY, INC., a California corporation; L & F INDUSTRIES, INC., a California corporation; EFCO, INC., a Pennsylvania corporation, d/b/a ERIE PRESS SYSTEMS; The estate of | Complaint Filed:    10/23/2017<br><br>Trial Date:         None Set<br><br>DEMAND FOR JURY TRIAL |

HAMRICK & EVANS, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ELISABETH P. FRUDENFELD, a deceased individual; the executor, administrator, or trustee of the estate of ELISABETH P. FRUDENFELD, a deceased individual; the estate of KARL FRUDENFELD; the executor, administrator, or trustee of the estate of KARL FRUDENFELD a deceased individual; the trustees of a certain TRUST AGREEMENT DATED NOVEMBER 1, 1977, BETWEEN KARL FRUDENFELD AND ELISABETH P. FRUDENFELD; KARLA FRUDENFELD, an individual; the trustees of a certain FREDRICK AND MARGARET SUTTON TRUST; CRAIG FRUDENFELD, an individual, as custodian for ALEXANDER FRUDENFELD, AARON FRUDENFELD, and WENDI FRUDENFELD; ALEXANDER FRUDENFELD, an individual; AARON FRUDENFELD, an individual; WENDI FRUDENFELD, an individual; LAURI COOK, an individual, as custodian for MARINA COOK; MARINA COOK, an individual; ARBA, INC., a California corporation; PAT SIMMONS GOLF COMPANY aka PAT SIMMONS GOLF CO., a business entity form unknown; SAMUEL P. SIMMONS d/b/a PAT SIMMONS, INC., a business entity form unknown; SIMMONS INTERNATIONAL CORP., a business entity form unknown; SIMMONS INTERNATIONAL, INC., an Arizona corporation; SIMMONS INTERNATIONAL SPORTING GOODS, INC., a California corporation; PAT SIMMONS GOLF, LLC, an Arizona limited liability company; GOLF TECH, INC., a California corporation; THE GOLF FACTORY, INC., a corporation of unknown origin; LYMAN E. EDDY COMPANY, a California corporation aka LYMAN E. EDDY CO.; RING-O-STEEL CORPORATION, a California corporation; CALIFORNIA METAL PRODUCTS, INC., a California corporation; ROBINSON HELICOPTER COMPANY, INCORPORATED, a California corporation; RHI HOLDINGS, INC., a Delaware corporation; FAIRCHILD CORPORATION, a Delaware corporation; ARCONIC, INC., a Pennsylvania corporation; SOLARAY

-2-

HI-SHEAR CORPORATION'S THIRD AMENDED THIRD-PARTY COMPLAINT

HAMRICK & EVANS, LLP

INDUSTRIES, INC., a California corporation; DASCO ENGINEERING CORPORATION, a California corporation; LONGREN AIRCRAFT COMPANY, INC., a California corporation; MAGELLAN AEROSPACE, MIDDLETOWN, an Ohio corporation; HF GROUP, INC., a California corporation; RECREATIONAL VANS, INC., a California corporation; R.G. HARRIS CO., a California Corporation; ROBERT G. HARRIS, an individual; the estate of ROBERT G. HARRIS; the executor, administrator, or trustee of the estate of ROBERT G. HARRIS; EXCELLON TECHNOLOGIES, LLC, a California limited liability company, d/b/a EXCELLON AUTOMATION; EXCELLON ACQUISITIONS, LLC, an Oregon limited liability company; TURNING POINT CAPITAL, LLC, an Oregon limited liability company; ESTERLINE TECHNOLOGIES CORPORATION, a Delaware corporation; JOSHMO, LLC, an Oregon limited liability company; DEBRA-ADKINS MESSENGER and JERRY LEE HEUER, trustees of the ADKINS FAMILY TRUST, ESTABLISHED APRIL 16, 1991; SBL PROPERTIES, LLC, a California limited liability company; DCH TL HOLDINGS, LLC, a Delaware limited liability company, d/b/a Torrance Toyota, d/b/a Torrance Scion; S.B.L. AUTO, INC. d/b/a SOUTH BAY LEXUS, a California corporation; THE UNITED STATES OF AMERICA, DEPARTMENT OF DEFENSE, DEPARTMENT OF THE ARMY; VIRGIL C. JOHNSON and JAMES R. STRUTZEL d/b/a JOHNSON & STRUTZEL, a general partnership d/b/a MAYFLOWER TRAILER; JOHNSON & STRUTZEL CO., a California corporation; COAST TRAILER MANUFACTURING CO., a California corporation; BRITTAIN INDUSTRIES, INC., a California corporation; NARCO SCIENTIFIC, INC., a Delaware corporation aka NARCO SCIENTIFIC INDUSTRIES, INC.; the estate of MARTIN GILTSCH JR. d/b/a GILTSCH MANUFACTURING CO.; the executor, administrator, or trustee of the estate of MARTIN GILTSCH JR. d/b/a GILTSCH MANUFACTURING CO.; GILTSCH

HAMRICK & EVANS, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANUFACTURING CO., a business entity form unknown; INTERNATIONAL PRODUCTS, INC. aka INTERNATIONAL PRODUCTS COMPANY, INC. aka IPC, INC., a corporation of unknown origin; and ROES 1 to 10, inclusive,

Third-Party Defendants.

Defendant, Counter-Claimant, Third-Party Plaintiff, and Third-Party Defendant HI-SHEAR CORPORATION, a Delaware corporation sued and served herein as HI-SHEAR CORPORATION, a Delaware corporation, d/b/a LISI AEROSPACE ("Hi-Shear") hereby alleges as follows against the following enumerated Third-Party Defendants:

a.   SHERIDAN-GRAY, INC., a California corporation ("Sheridan-Gray"); L & F INDUSTRIES, INC., a California corporation (*a corporate successor to* Sheridan-Gray) ("L&F"); EFCO, INC., a Pennsylvania corporation, d/b/a ERIE PRESS SYSTEMS (*a corporate successor to* Sheridan-Gray and/or L&F) ("EFCO");

b.   The estate of ELISABETH P. FRUDENFELD; the executor, administrator, or trustee of the estate of ELISABETH P. FRUDENFELD; the estate of KARL FRUDENFELD; the executor, administrator, or trustee of the estate of KARL FRUDENFELD; [1] the

_____

[1] As to Third-Party Defendants the estate of ELISABETH P. FRUDENFELD; the executor, administrator, or trustee of the estate of ELISABETH P. FRUDENFELD; the estate of KARL FRUDENFELD; and the executor, administrator, or trustee of the estate of KARL FRUDENFELD, and to the extent CERCLA does not preempt California Code of Civil procedure section 366.2 *et seq.*, Hi-Shear only seeks damages within the limits and coverage of each of these Defendants' applicable insurance policies.

-4-

HAMRICK & EVANS, LLP

1           trustees of a certain TRUST AGREEMENT DATED NOVEMBER 1,

2           1977, BETWEEN KARL FRUDENFELD AND ELISABETH P.

3           FRUDENFELD; KARLA FRUDENFELD, an individual; the trustees

4           of a certain FREDRICK AND MARGARET SUTTON TRUST;

5           CRAIG FRUDENFELD, an individual, as custodian for

6           ALEXANDER FRUDENFELD, AARON FRUDENFELD, and

7           WENDI FRUDENFELD; ALEXANDER FRUDENFELD, an

8           individual; AARON FRUDENFELD, an individual; WENDI

9           FRUDENFELD, an individual; and LAURI COOK, an individual, as

10          custodian for MARINA COOK; MARINA COOK, an individual

11          (collectively the "Frudenfeld Third-Party Defendants");

12   c.    ARBA, INC., a California corporation ("Arba");

13   d.    PAT SIMMONS GOLF COMPANY aka PAT SIMMONS GOLF CO.,

14          a business entity form unknown; SAMUEL P. SIMMONS d/b/a PAT

15          SIMMONS, INC., a business entity form unknown (*a corporate*

16          *successor* to PAT SIMMONS GOLF COMPANY aka PAT SIMMONS

17          GOLF CO.); SIMMONS INTERNATIONAL CORP., a business entity

18          form unknown (*a corporate successor* to PAT SIMMONS GOLF

19          COMPANY aka PAT SIMMONS GOLF CO.); SIMMONS

20          INTERNATIONAL, INC., an Arizona corporation (*a corporate*

21          *successor* to PAT SIMMONS GOLF COMPANY aka PAT SIMMONS

22          GOLF CO.); SIMMONS INTERNATIONAL SPORTING GOODS,

23          INC., a California corporation (*a corporate successor* to PAT

24          SIMMONS GOLF COMPANY aka PAT SIMMONS GOLF CO.); and

25          PAT SIMMONS GOLF, LLC, an Arizona limited liability company (*a*

26          *corporate successor* to PAT SIMMONS GOLF COMPANY aka PAT

27          SIMMONS GOLF CO.) (collectively "Pat Simmons");

28   / / /

HAMRICK & EVANS, LLP

e.   GOLF TECH, INC., a California corporation (*formerly PACIFIC CASCADE MACHINE AND TOOL,* a business entity form unknown); THE GOLF FACTORY, INC., a corporation of unknown origin (*a corporate successor to* GOLF TECH, INC.) (collectively "Golf Tech");

f.   LYMAN E. EDDY COMPANY, a California corporation aka LYMAN E. EDDY CO.; RING-O-STEEL CORPORATION, a California corporation; and CALIFORNIA METAL PRODUCTS, INC., a California corporation (collectively "Lyman");

g.   ROBINSON HELICOPTER COMPANY, INCORPORATED, a California corporation ("Robinson");

h.   RHI HOLDINGS, INC., a Delaware corporation (*formerly REXNORD HOLDINGS, INC.,* a Delaware corporation*, which is a corporate successor to REXNORD, INC.,* a Wisconsin corporation) ("Rexnord"); FAIRCHILD CORPORATION, a Delaware corporation ("Fairchild"); ARCONIC, INC., a Pennsylvania corporation (*formerly ALCOA, INC., a Delaware corporation*) ("Arconic");

i.   SOLARAY, INC., a California corporation ("Solaray");

j.   DASCO ENGINEERING CORPORATION, a California corporation ("Dasco");

k.   LONGREN AIRCRAFT COMPANY, INC., a California corporation (*formerly* HAMPDEN WENTWORTH and GORDON F. CRONKHITE, a general partnership, d/b/a LONGREN AIRCRAFT COMPANY, a limited partnership) ("Longren");

l.   MAGELLAN AEROSPACE, MIDDLETOWN, an Ohio corporation (*formerly* AERONCA, INC., an Ohio corporation and/or AERONCA MANUFACTURING CORPORATION, an Ohio corporation) ("Magellan");

///

HAMRICK & EVANS, LLP

1

    m.    HF GROUP, INC., a California corporation (*formerly* HOUSTON

2
             FEARLESS 76, INC., a California corporation, *who was formerly*

3
             HORKEY-MOORE ASSOCIATES, a division of HOUSTON

4
             FEARLESS CORP. a corporation of unknown origin, *who was*

5
             *formerly* HORKEY AND ASSOCIATES, a California corporation)

6
             ("HF Group");

7
    n.    RECREATIONAL VANS, INC., a California corporation ("RVI");

8
    o.    R. G. HARRIS CO., a California Corporation ("R.G. Harris Co.") and

9
             ROBERT G. HARRIS, an individual or the estate of ROBERT G.

10
             HARRIS or the executor, administrator, or trustee of the estate of

11
             ROBERT G. HARRIS[2] ("Robert Harris") (collectively the "Harris

12
             Third-Party Defendants");

13
    p.    EXCELLON TECHNOLOGIES, LLC, a California limited liability

14
             company, d/b/a EXCELLON AUTOMATION and EXCELLON

15
             ACQUISITIONS, LLC, an Oregon limited liability company

16
             (*corporate successors to* EXCELLON AUTOMATION CO., a

17
             corporation of unknown origin, but doing business in California)

18
             (collectively "Excellon"); TURNING POINT CAPITAL, LLC, an

19
             Oregon limited liability company (*a corporate successor to*

20
             EXCELLON AUTOMATION CO., a corporation of unknown origin,

21
             but doing business in California) ("Turning Point"); and ESTERLINE

22
             TECHNOLOGIES CORPORATION, a Delaware corporation (*a*

23
             *corporate successor to* EXCELLON AUTOMATION CO., a

24

25
[2] As to Third-Party Defendant Robert Harris, and to the extent CERCLA does not

26
preempt California Code of Civil procedure section 366.2 *et seq.*, Hi-Shear only

27
seeks damages within the limits and coverage of each of these Defendants'

28
applicable insurance policies.

HI-SHEAR CORPORATION'S THIRD AMENDED THIRD-PARTY COMPLAINT

HAMRICK & EVANS, LLP

1    corporation of unknown origin, but doing business in California)

2    ("Esterline") (collectively the "Excellon Third-Party Defendants");

3    q.    JOSHMO, LLC, an Oregon limited liability company ("JOSHMO");

4    r.    DEBRA-ADKINS MESSENGER and JERRY LEE HEUER, trustees

5          of the ADKINS FAMILY TRUST, ESTABLISHED APRIL 16, 1991

6          ("Adkins"); and SBL PROPERTIES, LLC, a California limited liability

7          company ("SBL Properties");

8    s.    DCH TL HOLDINGS, LLC, a Delaware limited liability company,

9          d/b/a Torrance Toyota, d/b/a Torrance Scion (*formerly* RAAMCO

10         MOTORS, INC., a California corporation) ("DCH");

11   t.    S.B.L. AUTO, INC. d/b/a SOUTH BAY LEXUS, a California

12         corporation ("Lexus");

13   u.    THE UNITED STATES OF AMERICA, DEPARTMENT OF

14         DEFENSE, DEPARTMENT OF THE ARMY (the "Army");

15   v.    VIRGIL C. JOHNSON and JAMES R. STRUTZEL d/b/a JOHNSON

16         & STRUTZEL, a general partnership, d/b/a MAYFLOWER

17         TRAILER; and JOHNSON & STRUTZEL CO., a California

18         corporation (collectively "Johnson & Strutzel");

19   w.    COAST TRAILER MANUFACTURING CO., a California corporation

20         ("Coast Trailer");

21   x.    BRITTAIN INDUSTRIES, INC., a California corporation (*a*

22         *subsidiary of* NATIONAL AERONAUTICAL CORP., a Pennsylvania

23         corporation) (collectively "Brittain Industries");

24   y.    NARCO SCIENTIFIC, INC. a Delaware corporation aka NARCO

25         SCIENTIFIC INDUSTRIES, INC. ("Narco Scientific");

26   z.    The estate of MARTIN GILTSCH JR. d/b/a GILTSCH

27         MANUFACTURING CO.; the executor, administrator, or trustee of the

28         estate of MARTIN GILTSCH JR. d/b/a GILTSCH

-8-

HAMRICK & EVANS, LLP

1   MANUFACTURING CO.[3]; and GILTSCH MANUFACTURING CO.,

2   a business entity form unknown (collectively "Giltsch

3   Manufacturing");

4   aa.   INTERNATIONAL PRODUCTS, INC. aka INTERNATIONAL

5   PRODUCTS COMPANY, INC., aka IPC, INC., a corporation of

6   unknown origin ("International Products"); and

7   bb.   ROES 1 through 10 (ROES 1 to 10 and all of the above Third-Party

8   Defendants are collectively referred to as "Third-Party Defendants"):

9   **STATEMENT OF THE ACTION**

10   1.   In response to the environmental contamination claims made against it

11   by Plaintiff and Counter-Defendant the CITY OF TORRANCE (the "City" or

12   "Plaintiff"), and in order to avoid or minimize its alleged liability in connection with

13   such claims, and in order to recover its own costs, Hi-Shear brings this Third-Party

14   Complaint against the Third-Party Defendants for Contribution and Cost Recovery

15   under the Comprehensive Environmental Response, Compensation and Liability Act

16   of 1980, as amended ("CERCLA"), Declaratory Relief under CERCLA,

17   Contribution under the California Hazardous Substances Act, Declaratory Relief

18   under the California Hazardous Substances Act, Total Indemnity, and Equitable

19   Indemnity (the "Third Party Claims"). The Third-Party Claims arise out of the same

20   transactions, occurrences and set of circumstances as the claims set forth in the

21   City's Complaint in this action.

22   _____

23   [3] As to Third-Party Defendants the estate of MARTIN GILTSCH JR. d/b/a

24   GILTSCH MANUFACTURING CO. and the executor, administrator, or trustee of

25   the estate of MARTIN GILTSCH JR. d/b/a GILTSCH MANUFACTURING CO.,

26   and to the extent CERCLA does not preempt California Code of Civil procedure

27   section 366.2 *et seq.*, Hi-Shear only seeks damages within the limits and coverage of

28   each of these Third-Party Defendants' applicable insurance policies.

2.      The alleged area of contamination for which Hi-Shear seeks relief is certain real property in and around the north-east corner of the Torrance Airport/Zamperini Field (the "Airport"). This includes approximately 14 acres of real property owned by the City located at 2600 Skypark Drive, Torrance, CA ("Hi-Shear Property"). Hi-Shear has leased the Hi-Shear Property from the City since approximately 1954.

3.      Additionally, the alleged area of contamination for which Hi-Shear seeks relief includes adjacent and nearby real property including, but not limited to:

a.      Real property located at 2530 Skypark Drive, Torrance, CA (the "Robinson Property"). Hi-Shear is informed and believes, and based thereon alleges, that the City owns this real property and that it either directly leases the Robinson Property to Robinson or that the City leases the Robinson Property to Robinson, who then subleases the Robinson Property to various unknown subtenants with the City's permission.

b.      Real property located at 24701, 24707, and 24747 Crenshaw Boulevard, Torrance, CA (the "Dasco Property"). Hi-Shear is informed and believes, and based thereon alleges, that the City owns this real property and that it either directly leases the Dasco Property to Dasco or that it leases the Dasco Property to Robinson, who then subleases the Dasco Property to Dasco with the City's permission.

c.      Real property located at 24751 and 24777 Crenshaw Boulevard, Torrance, CA (the "Lexus Property"). Hi-Shear is informed and believes, and based thereon alleges, that the City owns this real property and that the City either directly leases the Lexus Property to Lexus and DCH, or that the City leases the Lexus Property to Adkins, who then subleases the Lexus Property to Lexus and DCH with the City's permission.

d.      Real property located just south of the Lexus Property, which formerly housed an anti-aircraft missile battery, which was referred to as U.S. Nike

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

Missile Battery #57 (the "Nike Missile Battery Property").  The Nike Missile Battery Property contained three underground missile silos, which each housed conventional warhead Nike Ajax missiles.  These silos also contained associated hydraulic tanks and systems.  The silos were also surrounded by barracks and other defense structures, such as acid fueling stations and acid and chemical storage sheds. Hi-Shear is informed and believes, and based thereon alleges, that the City owns this real property and leased it to the Army from approximately 1955 to the mid-1970s.

e.      Real property located to the west of the Hi-Shear Property at 2700 Skypark Drive, Torrance, California, which is owned by the City and is currently occupied by a Lowes Home Improvement store (the "Lowes Property").

4.      All of the real properties referenced above, including the Hi-Shear Property, the Robinson Property, the Dasco Property, the Lexus Property, the Nike Missile Battery Property, and/or the Lowes Property, are referenced hereinafter as the "Contaminated Properties."

5.      On or about October 23, 2017, the City filed a Complaint ("Complaint") against Hi-Shear setting forth the following causes of action: (1) Response Costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607; (2) Declaratory Relief under CERCLA, 42 U.S.C. § 9613; (3) Abatement of Imminent and Substantial Endangerment, Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*; (4) Response Costs, Indemnity, and Contribution under California Superfund; (5) Breach of the 2004 Lease; (6) Nuisance; (7) Trespass; (8) Waste; (9) Negligence, Negligence Per Se; and (10) Declaratory Relief under California Law.

6.      The City has demanded a jury trial.

7.      The City's Complaint alleges that that the Hi-Shear Property and the other Contaminated Properties have become contaminated by a "release" and/or threatened "release" of a hazardous substance within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), allegedly consisting primarily of

-11-

HAMRICK & EVANS, LLP

halogenated volatile organic compounds ("HVOCs"), including Trichloroethylene ("TCE") and Perchloroethylene aka Tetrachloroethylene ("PCE"), along with various breakdown chemicals of such HVOCs. The City alleges that this contamination exists on the Hi-Shear Property and that it has migrated, and continues to migrate, from there to adjacent properties, including the Robinson Property, the Dasco Property, and the Lexus Property.

8.      The City alleges that Hi-Shear is liable for this contamination and seeks to recover from Hi-Shear damages, as well as past and future costs, that the City has allegedly incurred (or will incur) in response to purported contamination at the Hi-Shear Property and/or at the Contaminated Properties. Hi-Shear disputes the City's allegations and contends that the City and/or the Third-Party Defendants are liable in whole, or in part, for the alleged contamination, and therefore seeks cost recovery, contribution, indemnity, and declaratory relief against the Third-Party Defendants as set forth herein (and against the City as alleged in Hi-Shear's previously filed Counter-Claim).

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this Third-Party Complaint pursuant to (a) 28 U.S.C. § 1331; (b) 28 U.S.C. § 1367; (c) Federal Rule of Civil Procedure, Rule 14; and (d) Section 113(b) of CERCLA, 42 U.S.C. §9613(b). This Court also has subject matter jurisdiction over the claim for declaratory relief by virtue of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure. In addition, this Court has subject matter jurisdiction over the Third-Party Claims brought under state law under the doctrine of pendant jurisdiction set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). The Third-Party Claims under state law arise from the same nucleus of operative facts as the claims under federal law.

10.      Venue for the Third-Party Claims is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) in that the conduct at issue occurred in

1    this District.

2                                **PARTIES**

3           11.    Defendant, Counter-Claimant, Third-Party Plaintiff, and Third-Party

4    Defendant Hi-Shear, is a Delaware corporation, doing business as Lisi Aerospace on

5    the Hi-Shear Property.

6           12.    Plaintiff and Counter-Defendant, the City, is a municipal corporation

7    located in the County of Los Angeles. The City owns the Hi-Shear Property, and on

8    information and belief, Hi-Shear alleges that the City owns the other properties

9    making up the Contaminated Properties. As such, the City is a "person" and "owner"

10   as defined by CERCLA, 42 U.S.C. § 9601.

11          13.    Hi-Shear is informed and believes, and based thereon alleges, that

12   Sheridan-Gray owned and operated a machine shop at the Robinson Property and

13   the Dasco Property from approximately 1954 to 1966, and that Sheridan-Gray

14   "released" or threatened to "release" hazardous substances at those locations within

15   the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.

16   L&F is a successor corporation of Sheridan-Gray and EFCO is a successor

17   corporation of Sheridan-Gray and/or L&F.  As such, Sheridan-Gray, L&F, and

18   EFCO are each a "person" and "owner or operator" as defined by CERCLA, 42

19   U.S.C. § 9601.

20          14.    Hi-Shear is informed and believes, and based thereon alleges, that

21   Third-Party Defendants the Frudenfeld Third-Party Defendants leased the Robinson

22   Property and the Dasco Property from the City, and then sub-leased the Robinson

23   Property and the Dasco Property to various other third parties, from approximately

24   1966 to 2004, and that the Frudenfeld Third-Party Defendants had a duty, authority,

25   obligation, and/or right to manage, control, oversee, monitor, regulate and/or

26   supervise the acts or omissions of their various sub-tenants to prevent the "release"

27   or threatened "release" of hazardous substances, and to remediate any such

28   "release," at those locations within the meaning of Section 101(22) of CERCLA, 42

HAMRICK & EVANS, LLP

-13-

U.S.C. § 9601(22) during that time. As such, the Frudenfeld Third-Party Defendants are "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.

15.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Arba owned and operated a sheet metal shop at the Robinson Property and the Dasco Property from approximately 1966 to 1972 and that Arba "released" or threatened to "release" hazardous substances at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Arba is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

16.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendants Pat Simmons owned and operated a sporting goods manufacturing business at the Robinson Property and/or the Dasco Property from approximately 1972 to an unknown date and that Pat Simmons "released" or threatened to "release" hazardous substances at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. Furthermore, Pat Simmons owned and operated a sporting goods manufacturing business at the Lowes Property from an unknown start date to approximately 1971, and Pat Simmons "released" or threatened to "release" hazardous substances at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  SAMUEL P. SIMMONS d/b/a PAT SIMMONS, INC., SIMMONS INTERNATIONAL CORP., SIMMONS INTERNATIONAL, INC., SIMMONS INTERNATIONAL SPORTING GOODS, INC., and/or PAT SIMMONS GOLF, LLC are successor corporations of PAT SIMMONS GOLF COMPANY aka PATI SIMMONS GOLF CO.  As such, Pat Simmons are all "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.

17.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendants Golf Tech owned and operated a sporting goods manufacturing business at the Robinson Property and/or the Dasco Property from

HAMRICK & EVANS, LLP

1   approximately 1972 to an unknown date and that Golf Tech "released" or threatened
2   to "release" hazardous substances at those locations within the meaning of Section
3   101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  THE GOLF
4   FACTORY, INC. is a successor corporation of GOLF TECH, INC.  As such, Golf
5   Tech are all "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C.
6   § 9601.
7          18.    Hi-Shear is informed and believes, and based thereon alleges, that
8   Third-Party Defendants Lyman owned and operated manufacturing and/or metal
9   stamping businesses at the Robinson Property and/or the Dasco Property from
10  approximately 1974 to approximately 1979 and that Lyman "released" or threatened
11  to "release" hazardous substances at those locations within the meaning of Section
12  101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  As such, Lyman are
13  "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.
14         19.    Hi-Shear is informed and believes, and based thereon alleges, that
15  Third-Party Defendant Robinson owned and operated a manufacturing shop at the
16  Robinson Property and the Dasco Property from approximately 1977 to 1995 and
17  that Robinson "released" or threatened to "release" hazardous substances at those
18  locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22)
19  during that time. Hi-Shear is further informed and believes, and based thereon
20  alleges, that Robinson leased the Robinson Property and the Dasco Property from
21  the Frudenfeld Third-Party Defendants and then sub-leased the Robinson Property
22  and the Dasco Property to various other third parties since approximately 1977 to
23  the present and that Robinson had a duty, authority, obligation, and/or right to
24  manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of
25  their various sub-tenants to prevent the "release" or threatened "release" of
26  hazardous substances, and to remediate any such "release," at those locations within
27  the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.
28  As such, Robinson is a "person" and "owner or operator" as defined by CERCLA,

-15-

42 U.S.C. § 9601.

20.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendants Rexnord, Fairchild, and/or Arconic are liable as successor corporations to REXNORD, INC. and that REXNORD, INC. owned and operated a manufacturing shop at the Robinson Property and the Dasco Property from approximately 1985 to 1995 and that REXNORD, INC. "released" or threatened to "release" hazardous substances at those locations within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Rexnord, Fairchild, and/or Arconic are each a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

21.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Solaray owned and operated a business at the Dasco Property from approximately 1962 to an unknown date and that Solaray "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Solaray is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

22.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Dasco owned and operated a business at the Dasco Property from approximately 1995 to the present and that Dasco "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Dasco is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

23.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Longren owned and operated an aerospace manufacturing business at the Lexus Property from approximately 1954 to 1959 and that Longren "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

As such, Longren is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

24.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Magellan is a successor corporation to AERONCA, INC. and/or AERONCA MANUFACTURING CORPORATION and that AERONCA, INC. and/or AERONCA MANUFACTURING CORPORATION owned and operated a aerospace manufacturing shop at the Lexus Property from approximately 1954 to 1979 and that AERONCA, INC. "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  As such, Magellan is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

25.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant HF Group is a successor corporation to HORKEY-MOORE ASSOCIATES, a division of HOUSTON FEARLESS CORPORATION, and that HORKEY-MOORE ASSOCIATES owned and operated a manufacturing business at the Lexus Property from approximately 1954 to 1960 and that HORKEY-MOORE ASSOCIATES "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, HF Group is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

26.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant RVI owned and operated an automotive business at the Lexus Property from approximately 1977 to an unknown date and that RVI "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, RVI is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

/ / /

27.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Harris Third-Party Defendants leased the Lexus Property from the City, and then sub-leased the Lexus Property to various other third parties, from approximately 1977 to an unknown date and that the Harris Third-Party Defendants had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release," at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, the Harris Third-Party Defendants are "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.

28.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendants Excellon and/or Esterline owned and operated a manufacturing business at the Lexus Property from approximately 1979 to 2003 and that Excellon "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. Hi-Shear is further informed and believes, and based thereon alleges, that Third-Party Defendants Excellon, Turning Point, Esterline and/or JOSHMO are successor corporations to either Excellon and/or Esterline. As such, the Excellon Third-Party Defendants and/or JOSHMO are "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.

29.     Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant JOSHMO leased the Lexus Property from the City, and then sub-leased the Lexus Property to various other third parties, from approximately 2003 to 2006 and that JOSHMO had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of its various sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release," at that location within the meaning

-18-

HAMRICK & EVANS, LLP

of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, JOSHMO is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

30.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Adkins leased the Lexus Property from the City, and then sub-leased the Lexus Property to various other third parties, from approximately 2004 to approximately 2015 or 2018 and thereafter, Third-Party Defendant SBL Properties leased the Lexus Property from the City, and then sub-leased the Lexus Property to various third parties to the present and that Adkins and SBL Properties had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release," at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  As such, Adkins and SBL Properties are a "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.

31.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant DCH is a successor corporation of RAAMCO MOTORS, INC. and that RAAMCO MOTORS, INC. and DCH currently operate an automobile business at the Lexus Property, specifically conducting and managing business activities at the Lexus Property, and have done so since approximately 2005. RAAMCO MOTORS, INC. and/or DCH "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, DCH is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

32.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Lexus owned and operated an automobile business at the Lexus Property from approximately 2007 to the present and that Lexus "released" or

-19-

threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Lexus is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

33.    Third-Party Defendant the Army operated, controlled, directed the workings of, managed, and conducted the affairs of an anti-aircraft missile battery at the Nike Missile Battery Property, which it leased from the City from at least 1955 to approximately the mid-1970s.  The missile battery consisted of three underground missile silos and launch pads that housed Nike Ajax missiles with conventional warheads, barracks, utility structures, acid fueling stations, acid storage sheds, chemical storage sheds, chemical sumps, drywells, and other satellite buildings, all of which were located on real property directly south of the Lexus Property.  The underground missile silos contained hydraulic systems, including large tanks, hydraulic actuation cylinders, hydraulic lifts, and hydraulic plumbing.[4]

34.    At some unknown time after the 1970s, the Army removed the hydraulic tanks from the underground silos, but left approximately 400-500 gallons of hydraulic fluid inside of the plumbing and other hardware of each silo.  Then, in 1991, the Army classified the Nike Missile Battery Property as a Formerly Used Defense Site, noted the remaining hydraulic fluids, but took no other action to

_____

[4] Hi-Shear understands that the Army also operated a firing control center in Redondo Beach for the anti-aircraft missile battery that was located on the Nike Missile Battery Property.  That firing control center is not subject to Hi-Shear's claims and is not included in the Nike Missile Battery Property definition. Furthermore, Hi-Shear understands that the Army leased airspace right-of-way from the City for the flight paths of the anti-aircraft missiles housed at the Nike Missile Battery Property.  That airspace lease is not subject to Hi-Shear's claims and is not included in the Nike Missile Battery Property definition.

-20-

HAMRICK & EVANS, LLP

1     remediate the site.

2        35.     Furthermore, in 1984 the U.S. Army Toxic and Hazardous Materials

3 Agency, Assessments Division commissioned a report, entitled "Historical

4 Overview of the Nike Missile System" (the "Report"). The Report documented

5 former Nike missile sites around the country and detailed the standard facilities

6 present and the standard operational procedures, including hazardous material

7 handling and disposal for these sites, which were consistent throughout the various

8 Nike missile sites across the country. The Report indicated that the Nike missile

9 sites were operated and controlled by the Army and confirmed that the "normal

10 operation of a Nike site included the use and onsite disposal of solvents, battery

11 acid, fuel, and hydraulic fluids. Environmentally persistent compounds disposed of

12 included carbon tetrachloride, trichloroethylene, lead, and various hydrocarbons."

13 The Report explained that the launch areas included the silos that housed the

14 missiles, as well as facilities and equipment required to assemble, test, and maintain

15 the missiles and associated launchers. The Report then described that in order to

16 keep the missile batteries in a combat-ready posture, the Army was required to store,

17 handle, and dispose of, not only missile components and propellants, but also

18 solvents, fluids, fuels, and other materials. With regard to the solvents used at Nike

19 sites, the Report indicated that such solvents were used to clean the missiles, the

20 housing systems, and essentially any other machinery at the sites. Significantly, the

21 Report further confirmed that these solvents were disposed of onsite – "the most

22 common liquids disposed of onsite were solvents used in maintenance operations.

23 These were routinely dumped into sumps where they soaked into the ground". The

24 Report documented that the chemicals and fuels used at the Nike sites, including

25 solvents such a trichloroethylene (the very solvent that is of primary concern in this

26 case), were stored on-site near the silos and launching facilities in various different

27 buildings. Finally, the Report confirmed that when these Nike sites were

28 deactivated, the Army would often dump any and all remaining waste, including

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

1    solvents, in on-site sumps or on open ground at nearby properties surrounding the

2    missile silos.

3        36.    Based on the Report and on Hi-Shear's own investigation, including

4    the review of various leasing and operational documents provided by the City, Hi-

5    Shear alleges, on information and belief, that the Army operated, controlled,

6    directed the workings of, managed, and conducted the affairs of a Nike anti-aircraft

7    missile silo (housing three Nike Ajax Missiles) at the Nike Missile Battery Property

8    in conformity with the general standards and practices at Nike missile sites as

9    detailed in the Report.  During the time period that the Army controlled, directed,

10   and operated the anti-aircraft missile silos at the Nike Missile Battery Property, the

11   Army had the authority and control to, and in fact did, direct its soldiers and other

12   related personnel to conduct various maintenance-related activities that included the

13   use of HVOCs, including trichloroethylene.  These maintenance activities included

14   cleaning the missiles and their ancillary machinery with solvents, such as

15   trichloroethylene, as well as with other hazardous substances.  Rather than disposing

16   of used solvents via off-site facilities, the Report confirms that the Army authorized

17   and directed its soldiers and related personnel to dispose of and/or dump those

18   HVOCs into ground sumps and drywells where the HVOCs would soak into the

19   ground.  Hi-Shear alleges, on information and belief, that the Army disposed and/or

20   dumped HVOCs, including trichloroethylene, at the Nike Missile Battery Property,

21   which soaked into and contaminated the soil underneath the Nike Missile Battery

22   Property.  These activities took place during the entire time period in which the

23   Army maintained active Nike Ajax missiles at the Nike Missile Battery Property and

24   had the authority to control the day-to-day maintenance activities occurring on the

25   site, including the use, disposal, and/or dumping of HVOCs, such as

26   trichloroethylene.

27       37.    Based on the Report and ongoing investigation regarding

28   contamination at the Contaminated Properties and the sources of that contamination,

including the review of various leasing and operational documents provided by the City, Hi-Shear alleges, on information and belief, that the Army's activities, including storing, using, disposing and/or dumping of trichloroethylene at the Nike Missile Battery Property from approximately 1955 to the mid-1970s, constituted "releases" or threatened "releases" of hazardous substances within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

38.     Based on ongoing investigation regarding contamination at the Contaminated Properties and the sources of that contamination, including information derived from monitoring wells and soil probes bordering and on the Nike Missile Battery Property, Hi-Shear is also informed and believes that the hazardous substances, including HVOCs such as trichloroethylene, released by the Army during its operation of, control of, direction of, and authority over the Nike Missile Battery Property have and or are likely to continue to migrate from the Nike Missile Battery Property to the Hi-Shear Property and/or to the other Contaminated Properties via the soil above the regional groundwater table and via a semi-defined perched groundwater layer that extends from the Nike Missile Battery Property to the Hi-Shear Property and/or the other Contaminated Properties.  The groundwater flow direction of the semi-defined perched groundwater layer is believed to either currently be, or at one time was, flowing in a northerly direction, resulting in contamination from the Nike Missile Battery Property migrating to some or all of the Contaminated Properties.   As such, the Army is a "person" and "operator" as defined by CERCLA, 42 U.S.C. § 9601.

39.     Hi-Shear is informed and believed, and based thereon alleges, that Third-Party Defendants Johnson & Strutzel owned and operated an aerospace manufacturing business at the Lowes Property from approximately 1954 to 1966 and "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  Furthermore, Johnson & Strutzel leased the Lowes Property from the

HAMRICK & EVANS, LLP

City, and then sub-leased the Lowes Property to various other third parties, from approximately 1954 to 1966, and that Johnson & Strutzel had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release," at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  As such, Johnson & Strutzel are "persons" and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.

40.    Hi-Shear is informed and believes, and based thereon alleges, that Third-Party Defendant Coast Trailer owned and operated a manufacturing business at the Lowes Property from approximately 1955 to 1966 and that Coast Trailer "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Coast Trailer is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

41.    Hi-Shear is informed and believed, and based thereon alleges, that Third-Party Defendant Brittain Industries owned and operated a manufacturing business at the Lowes Property from approximately 1966 to 1969 and "released" or threatened to "release" hazardous substances at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  Furthermore, Brittain Industries leased the Lowes Property from the City and then sub-leased some or all of the Lowes Property to various other third parties, from approximately 1966 to 1969 and that Brittain Industries had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of its various sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release," at that location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time. As such, Brittain Industries is a "person" and "owner or operator" as defined by

-24-

1    CERCLA, 42 U.S.C. § 9601.

2         42.    Hi-Shear is informed and believed, and based thereon alleges, that

3    Third-Party Defendant Narco Scientific owned and operated a manufacturing

4    business at the Lowes Property from approximately 1969 to 1971 and "released" or

5    threatened to "release" hazardous substances at that location within the meaning of

6    Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  Furthermore,

7    Narco Scientific leased the Lowes Property from the City and then sub-leased some

8    or all of the Lowes Property to various other third parties, from approximately 1969

9    to 1971 and that Narco Scientific had a duty, authority, obligation, and/or right to

10   manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of

11   its various sub-tenants to prevent the "release" or threatened "release" of hazardous

12   substances, and to remediate any such "release," at that location within the meaning

13   of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during that time.  As such,

14   Narco Scientific is a "person" and "owner or operator" as defined by CERCLA, 42

15   U.S.C. § 9601.

16        43.    Hi-Shear is informed and believes, and based thereon alleges, that

17   Third-Party Defendants Giltsch Manufacturing owned and operated an automobile

18   manufacturing business at the Lowes Property from approximately 1969 to 1980

19   and that Giltsch Manufacturing "released" or threatened to "release" hazardous

20   substances at that location within the meaning of Section 101(22) of CERCLA, 42

21   U.S.C. § 9601(22) during that time. As such, Giltsch Manufacturing are "persons"

22   and "owners or operators" as defined by CERCLA, 42 U.S.C. § 9601.

23        44.    Hi-Shear is informed and believes, and based thereon alleges, that

24   Third-Party Defendant International Products owned and operated a manufacturing

25   business at the Lowes Property from approximately 1978 to 1983 and at the

26   Robinson Property and/or Dasco Property from 1975 to an unknown time and that

27   International Products "released" or threatened to "release" hazardous substances at

28   each location within the meaning of Section 101(22) of CERCLA, 42 U.S.C. §

-25-

9601(22) during that time. As such, International Products is a "person" and "owner or operator" as defined by CERCLA, 42 U.S.C. § 9601.

45.     Hi-Shear is presently unaware of the true names and capacities of the Third-Party Defendants sued herein as Roes 1-10 and therefore sues them by these fictitious names. Hi-Shear will amend its Third-Party Complaint to allege their true names and capacities when they are ascertained. Hi-Shear is informed and believes, and based thereon alleges, that each of the fictitiously named Third-Party Defendants is responsible in some manner for the occurrences herein alleged, and that Hi-Shear's damages were proximately caused by their conduct.

## **FIRST CLAIM FOR RELIEF**

### **Contribution under CERCLA, 42 U.S.C. § 9613(f)**

### **(Against all Third-Party Defendants and ROES 1-10)**

46.     Hi-Shear repeats the allegations contained in paragraphs 1 through 40 inclusive as though fully set forth herein.

47.     Hi-Shear's potential liability in this action arises from the City's allegations that Hi-Shear, by virtue of operating its business on the Hi-Shear Property, has released hazardous substances into the environment that have allegedly contaminated the Hi-Shear Property and have allegedly migrated from the Hi-Shear Property to the other Contaminated Properties.

48.     Hi-Shear is afforded the right under section 113(f) of CERCLA, 42 U.S.C. § 9613(f), to seek contribution from "any other party who is liable or potentially liable" under section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for any amounts Hi-Shear paid or incurred in excess of its equitable share of liability related to the investigation and remediation of any and all disposals and/or releases of hazardous substances at or about the Contaminated Properties, including the potential migration of hazardous substances from one Contaminated Property to one or more of the other Contaminated Properties or to other surrounding properties that are not part of the Contaminated Properties.

HAMRICK & EVANS, LLP

49.     On that basis, Hi-Shear asserts its right of contribution against each and every Third-Party Defendant in connection with the contamination alleged in the City's Complaint in this action.

50.     Each of the Contaminated Properties qualify as a "facility" pursuant to 42 U.S.C. § 9601.

51.     Hi-Shear is informed and believes, and based thereon alleges, that each of the Third-Party Defendants either:

      a.     "released" or threatened to "release" hazardous substances at one or more of the Contaminated Properties within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during their ownership and/or occupation of said location; and/or

      b.     owned or leased one or more of the Contaminated Properties and had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various tenants and/or sub-tenants to prevent the "release" or threatened "release" of hazardous substances, and to remediate any such "release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) at said location; and/or

      c.     is the current owner and/or operator of one or more of the Contaminated Properties.

52.     Therefore, each of the Third-Party Defendants is potentially liable under § 107(a) for any costs of response incurred by Hi-Shear for the investigation and remediation of any and all disposals and/or releases of hazardous substances at or about the Contaminated Properties.

53.     Hi-Shear is thus entitled to contribution from each of the Third-Party Defendants under § 113(f) of CERCLA, 42 U.S.C. § 9613(f) for any and all costs,

-27-

HAMRICK & EVANS, LLP

including but not limited to, assessment, investigation, evaluation, monitoring, mitigation, removal, and/or remedial action costs and/or enforcement costs, attorney's fees, consultant fees, and related costs, together with interest and court costs, incurred by Hi-Shear in excess of Hi-Shear's proportionate liability.

## SECOND CLAIM FOR RELIEF

### Cost Recovery under CERCLA, 42 U.S.C. § 9607(a)

### (Against all Third-Party Defendants and ROES 1-10)

54.     Hi-Shear repeats the allegations contained in paragraphs 1 through 48 inclusive as though fully set forth herein.

55.     Hi-Shear's potential liability in this action arises from the City's allegations that Hi-Shear, by virtue of operating its business on the Hi-Shear Property, has released hazardous substances into the environment that have allegedly contaminated the Hi-Shear Property and have allegedly migrated from the Hi-Shear Property to the other Contaminated Properties.

56.     Each of the Contaminated Properties qualify as a "facility" pursuant to 42 U.S.C. § 9601.

57.     Hi-Shear is informed and believes, and based thereon alleges, that each of the Third-Party Defendants either:

>     a.     "released" or threatened to "release" hazardous substances at one or more of the Contaminated Properties within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) during their ownership and/or occupation of said location; and/or

>     b.     owned or leased one or more of the Contaminated Properties and had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various tenants and/or sub-tenants to prevent the "release" or threatened "release" of hazardous

-28-

HAMRICK & EVANS, LLP

substance, and to remediate any such "release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) at said location; and/or

c.   is the current owner and/or operator of one or more of the Contaminated Properties.

58.   Thus, each of the Third-Party Defendants is an "owner or operator" at the time when hazardous materials were allegedly released on some or all of the Contaminated Properties or is the current "owner or operator" for some or all of the Contaminated Properties and therefore each of the Third-Party Defendants is a "responsible," "liable" and/or "covered" party pursuant to 42 U.S.C. § 9607.

59.   Hi-Shear has incurred, and will continue to incur, response costs in relation to the investigation, mitigation, and/or remediation of any and all disposals and/or releases of hazardous substances at or about the Hi-Shear Property and the Contaminated Properties, including the response costs related to potential migration of hazardous substances from one Contaminated Property to one or more of the other Contaminated Properties or to other surrounding properties that are not part of the Contaminated Properties. These response costs are both necessary and consistent with the National Contingency Plan and were incurred in accordance with the applicable CERCLA requirements. These response costs include, but are not limited to, assessment, investigation, evaluation, monitoring, mitigation, removal, and/or remedial action costs and/or enforcement costs, attorney's fees, consultant fees, and related costs, all of which are and will continue to be necessary costs of response consistent with the National Contingency Plan.

60.   Furthermore, Hi-Shear, under order from the California Regional Water Quality Control Board ("RWQCB"), has incurred costs, and will continue to incur costs, related to the investigation of the extent of contamination in the soil vapor, soil, and groundwater at and around the Contaminated Properties. These investigations involve the installation and long term monitoring of soil vapor probes

HAMRICK & EVANS, LLP

and groundwater monitoring wells at and around the Contaminated Properties.  In order to delineate the full lateral and horizontal extent of HVOC contamination in all impacted media per the RWQCB order, it is anticipated that a very significant expansion of the existing groundwater and soil vapor monitoring network will be necessary. Additionally, it is necessary for the extent of the contaminated media to be fully delineated in order to conduct a proper design of a remediation system that will be approved by the RWQCB and meets CERCLA NCP requirements.

61.     Furthermore, pursuant to the RWCQB's order, Hi-Shear has incurred and will incur costs associated with investigating the extent of the contamination in the soil vapor, soil, and groundwater at and around the Nike Missile Battery Property, including costs to install monitoring wells and vapor probes on the Nike Missile Battery Property itself.  These are hard costs that Hi-Shear has incurred, and in the future will continue to incur, to determine the lateral and vertical extent of the Army's contamination plume that has migrated from the Nike Missile Battery Property.  It is anticipated that Hi-Shear will also incur further costs in the future to investigate, mitigate, or remediate the contamination on the Nike Missile Battery Property, some or all of which was caused by the Army's storage of, use of, disposal of, and/or dumping of HVOCs, such as trichloroethylene, during its control of, direction of, and operation of the activities involving those HVOCs at the Nike Missile Battery Property.

62.     Moreover, Hi-Shear has incurred costs, and will continue to incur costs, related to certain Interim Mitigation Measures ("IMMs"), including the installation and operation of a soil vapor extraction system and an interim groundwater bioremediation project.  These IMMs were designed to mitigate the migration of contamination as well as to facilitate contaminant source removal, at or around the Contaminated Properties.  These systems do, and will, comply with applicable CERCLA requirements, have been approved by the RWQCB, and are designed to reduce, eliminate, and/or mitigate the threats to human health and to the

-30-

HAMRICK & EVANS, LLP

1   environment that the HVOCs may pose.  It is anticipated that additional significant

2   mitigation measures will be needed to reduce the possibility of further downgradient

3   contaminant migration.

4       63.    Based on the above, Hi-Shear is entitled to reimbursement for any and

5   all such past, present, and/or future response costs incurred prior to trial, together

6   with interest thereon, with each of the Third-Party Defendants being strictly liable to

7   Hi-Shear for all such amounts under CERCLA.

8                    **THIRD CLAIM FOR RELIEF**

9             **Declaratory Relief under CERCLA, 42 U.S.C. § 9613**

10             **(Against all Third-Party Defendants and ROES 1-10)**

11      64.    Hi-Shear repeats the allegations contained in paragraphs 1 through 57

12   inclusive as though fully set forth herein.

13      65.    Hi-Shear prays for a declaratory judgment, pursuant to 28 U.S.C. §

14   2201 and 42 U.S.C. §§ 9607 and 9613, for the purpose of determining a question of

15   actual controversy between and among the parties, as appears above and as

16   hereinafter more fully appears.

17      66.    An actual controversy exists between Hi-Shear on the one hand and

18   each of the Third-Party Defendants on the other hand, regarding their respective

19   rights and obligations concerning necessary response costs under Section 107(a) of

20   CERCLA, 42 U.S.C. § 9607(a) and concerning the parties' respective liability for

21   contribution under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

22      67.    Hi-Shear asserts that each of the Third-Party Defendants either:

23             a.    "released" or threatened to "release" hazardous substances at

24                   one or more of the Contaminated Properties within the

25                   meaning of Section 101(22) of CERCLA, 42 U.S.C. §

26                   9601(22) during their ownership and/or occupation of said

27                   location; and/or

28   / / /

HAMRICK & EVANS, LLP

     b.    owned or leased one or more of the Contaminated Properties and had a duty, authority, obligation, and/or right to manage, control, oversee, monitor, regulate and/or supervise the acts or omissions of their various tenants and/or sub-tenants to prevent the "release" or threatened "release" of hazardous substance, and to remediate any such "release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) at said location; and/or

     c.    is the current owner and/or operator of one or more of the Contaminated Properties.

68. Thus, each of the Third-Party Defendants is an "owner or operator" at the time when hazardous materials were allegedly released on some or all of the Contaminated Properties and therefore each of the Third-Party Defendants is responsible for all response costs regarding alleged contamination at or around the Contaminated Sites under Section 107(a) of CERCLA, 42 U.S.C. 9607(a) and for any amounts paid by Hi-Shear over its equitable share of liability pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

69. Hi-Shear denies that it is responsible for any investigation, testing, removal, other remediation or monitoring of the alleged hazardous substances at or around the Contaminated Properties.

70. Hi-Shear desires a judicial determination of the rights and duties of Hi-Shear, on the one hand, and each of the Third-Party Defendants, on the other hand, with respect to the respective rights, obligations, and duties related to the removal, remediation, cleanup, evaluation, investigation, monitoring, assessment, and/or mitigation of the alleged contamination at the Contaminated Properties.

71. Hi-Shear therefore requests that this Court enter a declaratory judgment declaring that each of the Third-Party Defendants is liable for all or part of the costs plus interest of past, present, and future actions to be taken by Hi-Shear or other

-32-

HAMRICK & EVANS, LLP

persons consistent with the National Contingency Plan to respond to releases or threatened releases at or proximately caused by conditions that existed, do exist, or will exist at or in connection with the Contaminated Properties; for any past or future damages arising from the Contaminated Properties; and if Hi-Shear should be found liable for any part of the claims of the City as set forth in its Complaint in this action, Hi-Shear requests that this Court enter a declaratory judgment that Hi-Shear deposited no hazardous substances, hazardous waste, and/or petroleum products at the Contaminated Properties and that, therefore, Hi-Shear would only be liable for nominal damages, if any.

72.     Such a judicial determination setting forth the parties' respective rights, obligations, and duties is necessary in order for the respective parties to ascertain their respective rights, obligations, and duties and to avoid the multiplicity of actions that would result if Hi-Shear were forced to proceed against each of the Third-Party Defendants after each additional increment of response cost is incurred over Hi-Shear's equitable portion of liability.

## FOURTH CLAIM FOR RELIEF

**Contribution under Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300 *et seq.***

**(Against all Third-Party Defendants, except the Army, and ROES 1-10)**

73.     Hi-Shear repeats the allegations contained in paragraphs 1 through 66 inclusive as though fully set forth herein.

74.     The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health and Safety Code §§ 25300-25395, was enacted to encourage expedient cleanup of contaminated properties. To provide such encouragement, the legislature included the statutory right of indemnification in favor of those parties who clean up the properties against those parties who are liable for the contamination. Responsible parties include current and past owners and operators of a facility where contamination is located.

-33-

HAMRICK & EVANS, LLP

1    75.    The City owns the Contaminated Properties.

2    76.    The City alleges that the Hi-Shear Property and the other Contaminated

3    Properties have become contaminated with hazardous substances and seeks to

4    impose liability on Hi-Shear for that purported contamination.

5    77.    Hi-Shear alleges that each of the Third-Party Defendants, by their acts

6    and omissions, or by the acts and omissions of their predecessors, representatives,

7    affiliates, employees, agents, lessees, and/or vendors, caused or contributed to the

8    purported contamination of the Contaminated Properties.

9    78.    Hi-Shear alleges that each of the Third-Party Defendants is thus

10   statutorily liable for all costs that Hi-Shear has incurred, and will continue to incur,

11   in response to purported contamination at the Contaminated Properties, including

12   the cost to investigate and remediate the purported environmental conditions

13   existing at the Contaminated Properties.

14   79.    Hi-Shear has expended or will expend, and will continue to

15   expend, funds for investigation, remediation and monitoring activities

16   required by state, federal and administrative authorities.

17   80.    The liability of each of the Third-Party Defendants has not been

18   determined or discharged by arbitration under California Health and Safety Code §

19   25356.6.

20   81.    Hi-Shear alleges that it is entitled to contribution and indemnification,

21   in whole or in part, for all costs incurred or to be incurred for compliance with state,

22   federal and/or administrative instructions, based on Health and Safety Code §

23   25363.

24   / / /

25

26   / / /

27

28   / / /

-34-

HI-SHEAR CORPORATION'S THIRD AMENDED THIRD-PARTY COMPLAINT

HAMRICK & EVANS, LLP

## **FIFTH CLAIM FOR RELIEF**

**Declaratory Relief under Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300 *et seq.***

**(Against all Third-Party Defendants, except the Army, and ROES 1-10)**

82.     Hi-Shear repeats the allegations contained in paragraphs 1 through 75 inclusive as though fully set forth herein.

83.     An actual controversy exists between Hi-Shear on the one hand and each of the Third-Party Defendants on the other hand, regarding their respective rights and obligations concerning necessary response costs under Health and Safety Code Section 25363(e).

84.     Hi-Shear asserts that each of the Third-Party Defendants, as current or prior owner and operators of the Contaminated Properties, is responsible for all response costs regarding alleged contamination at or around the Contaminated Properties. Hi-Shear denies that it is responsible for any investigation, testing, removal, disposal, other remediation or monitoring of the alleged hazardous substances at or around the Contaminated Properties.

85.     Hi-Shear desires a judicial determination of the rights and duties of Hi-Shear, on the one hand, and each of Third-Party Defendants, on the other hand, with respect to their respective rights, obligations, and duties related to the removal, remediation, cleanup, evaluation, investigation, monitoring, assessment, and/or mitigation of the alleged contamination at the Contaminated Properties.

86.     Hi-Shear therefore requests that this Court enter a declaratory judgment declaring that each of the Third-Party Defendants is liable for all or part of the costs plus interest of past, present, and future actions to be taken by Hi-Shear or other persons to respond to releases or threatened releases at, or proximately caused by conditions that existed, do exist, or will exist at or in connection with, the Contaminated Properties; and for any past or future damages arising from the Contaminated Properties.

87.     Such a judicial determination setting forth the parties' respective rights, obligations, and duties is necessary in order for the respective parties to ascertain their respective rights, obligations, and duties and to avoid the multiplicity of actions that would result if Hi-Shear and/or each of the Third-Party Defendants were forced to proceed against each other after each additional increment of response cost is incurred over each party's respective equitable portion of liability.

## SIXTH CLAIM FOR RELIEF

### Total Indemnity

### (Against all Third-Party Defendants, except the Army, and ROES 1-10)

88.     Hi-Shear repeats the allegations contained in paragraphs 1 through 81 inclusive as though fully set forth herein.

89.     By reason of the foregoing, Hi-Shear alleges that if it is held responsible for any of the claims being asserted against it in this action, then Hi-Shear is entitled to total indemnity from each of the Third-Party Defendants for any and all damages Hi-Shear incurs from any such liability.

90.     Specifically, Hi-Shear alleges that each Third-Party Defendant is responsible, in whole or in part, for the contamination alleged above.  Hi-Shear has sustained damages as a result of that contamination and each Third-Party Defendant is equitably responsible for those damages, in whole or in part.

## SEVENTH CLAIM FOR RELIEF

### Equitable Indemnity

### (Against all Third-Party Defendants, except the Army, and ROES 1-10)

91.     Hi-Shear repeats the allegations contained in paragraphs 1 through 84 inclusive as though fully set forth herein.

92.     Hi-Shear alleges that, in equity and good conscience, if the City or any other third-party recovers against Hi-Shear, then Hi-Shear is entitled to equitable indemnity, apportionment of liability, and contribution from each of the Third-Party Defendants according to their respective fault, for the injuries and damages

-36-

HAMRICK & EVANS, LLP

allegedly sustained by the City, if any, by way of sums paid by Hi-Shear in settlement, or in the alternative, any judgments rendered against Hi-Shear in the action herein.

93.     Hi-Shear alleges that it will be compelled by the operation of applicable Federal and State laws to incur necessary response costs consistent with the National Contingency Plan and other abatement costs to remove, remediate, cleanup, evaluate, investigate, monitor, assess, and/or mitigate the alleged contamination from the Contaminated Properties, which are owned by the City, and to take other response actions necessary to protect public health and to enforce the liability schemes set forth in CERCLA and in State law.

94.     Hi-Shear alleges that each of the Third-Party Defendants is liable in whole or in part for the alleged contamination at the Contaminated Properties as a result of each of the Third-Party Defendants' current or prior ownership, management, and oversight of the Contaminated Properties, including but not limited to allowing, failing to stop, and/or causing the continued alleged release of hazardous substances into the environment in or around the Contaminated Properties, and as a result of each of the Third-Party Defendants' current or prior operations at the Contaminated Properties, including but not limited to their release of hazardous materials into the environment in or around the Contaminated Properties.

95.     Hi-Shear therefore alleges that each Third-Party Defendant is equitably bound and obligated, to indemnify, reimburse, and hold harmless Hi-Shear for and against any and all response costs and any other costs heretofore or hereafter incurred by Hi-Shear in responding to, investigating,  and remediating the purported contamination at or about the Contaminated Properties, including attorneys fees, which will be incurred as a result of Hi-Shear's investigation and remediation of the environmental conditions at or about the Contaminated Properties.

/ / /

HI-SHEAR CORPORATION'S THIRD AMENDED THIRD-PARTY COMPLAINT

HAMRICK & EVANS, LLP

## PRAYER FOR RELIEF

**WHEREFORE,** Hi-Shear prays for judgment as follows:

1.      Against each of the Third-Party Defendants for contribution under CERCLA, as more fully set forth in Hi-Shear's first cause of action;

2.      Against each of the Third-Party Defendants for cost recovery under CERCLA, as more fully set forth in Hi-Shear's second cause of action;

3.      Against each of the Third-Party Defendants for a judicial declaration under CERCLA that each of the Third-Party Defendants is liable for all past and future response costs, plus interest, incurred by Hi-Shear in connection with the Contaminated Properties, as more fully set forth in Hi-Shear's third cause of action;

4.      Against each of the Third-Party Defendants, except the Army, for contribution under the Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300 *et seq.*, as more fully set forth in Hi-Shear's fourth cause of action;

5.      Against each of the Third-Party Defendants, except the Army, for a judicial declaration under the Carpenter-Presley-Tanner Hazardous Substances Act, Cal. Health & Safety Code Sections 25300 *et seq.* that each of the Third-Party Defendants are liable for all past and future response costs incurred in connection with the Contaminated Properties, as more fully set forth in Hi-Shear's fifth cause of action;

6.      Against each of the Third-Party Defendants, except the Army, for total indemnity, as more fully set forth in Hi-Shear's sixth cause of action;

7.      Against each of the Third-Party Defendants, except the Army, for equitable indemnity, as more fully set forth in Hi-Shear's seventh cause of action;

8.      For costs of suit and attorneys' fees incurred by Hi-Shear in this action as permitted by statute; and

9.      For such other and further relief as the Court may deem just and proper.

/ / /

DATED:  January 4, 2019

HAMRICK & EVANS, LLP

By: __/s/ *David L. Evans*_____
   DAVID L. EVANS
   THOMAS P. SCHMIDT
   JEFF POOLE
   Attorneys for Defendant, Counter-Claimant, Third-Party Plaintiff, and Third-Party Defendant HI-SHEAR CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HAMRICK & EVANS, LLP

## **DEMAND FOR JURY TRIAL**

Hi-Shear demands a jury trial on all claims and matters which it is entitled to a trial by jury.

DATED:  January 4, 2019                    HAMRICK & EVANS, LLP


By:    /s/ *David L. Evans*
       DAVID L. EVANS
       THOMAS P. SCHMIDT
       JEFF POOLE
       Attorneys for Defendant, Counter-
       Claimant, and Third-Party Plaintiff HI-
       SHEAR CORPORATION

1

## CERTIFICATE OF SERVICE

2

3

4

I certify and state that I am now and at all times herein mentioned was, a citizen of the United States, over the age of eighteen (18) years, a resident of the County of Los Angeles, and not a party to the within action or cause.  My business address is Hamrick & Evans, LLP, 2600 West Olive Avenue, Suite 1020, Burbank, California 91505.

5

I hereby certify that I am employed in the office of a member of the bar of this court at whose direction the service was made.

6

7

I further certify that on January 4, 2019, I caused to be served the copies of the attached:

8

9

10

11

12

13

**HI-SHEAR CORPORATION'S THIRD AMENDED THIRD-PARTY COMPLAINT FOR:**
    **1.**      **CONTRIBUTION UNDER CERCLA**
    **2.**      **COST RECOVERY UNDER CERCLA**
    **3.**      **DECLARATORY RELIEF UNDER CERCLA**
    **4.**      **CONTRIBUTION UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**
    **5.**      **DECLARATORY RELIEF UNDER THE CARPENTER-PRESLEY-TANNER HAZARDOUS SUBSTANCES ACT**
    **6.**      **TOTAL INDEMNITY**
    **7.**      **EQUITABLE INDEMNITY**

14

15

on the parties in said action as follows:

16

17

18

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be serve by mail or by any other means permitted by the court rules.

19

20

☒    (Federal)  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

21

Executed on January 4, 2019, at Burbank, California.

22

/s/ Karen Cech
_____
Karen Cech

23

24

25

26

27

28

**HAMRICK & EVANS, LLP**

HI-SHEAR CORPORATION'S THIRD AMENDED THIRD-PARTY COMPLAINT