# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CITY OF TORRANCE,

                   Plaintiff,

   v.

HI-SHEAR CORPORATION, a Delaware Corporation, d/b/a LISI AEROSPACE, et al.

                  Defendants.

AND RELATED COUNTER CLAIMS AND THIRD-PARTY CLAIMS

Case No. 2:17-CV-7732-FWS-JPR

**CONSENT DECREE**

City Compl. Filed:  Oct. 23, 2017
Hi-Shear's Fifth Third-Party Compl. filed: Aug. 30, 2023

Judge:  Hon. Fred W. Slaughter

## BACKGROUND

A. Hi-Shear Corporation ("Hi-Shear") and the United States of America ("United States") have agreed to a final settlement of Hi-Shear's claims against the United States and the United States' counter-claims against Hi-Shear in the above-referenced action in the United States District Court for the Central District of California ("District Court").

B. Hi-Shear and the United States are each referred to herein as a "Party" and are collectively referred to herein as the "Parties" in this Consent Decree.

C. On October 23, 2017, the City of Torrance ("City") initiated this lawsuit by filing a complaint against Hi-Shear with claims alleged under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42

U.S.C. §§ 9607(a), 9613, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and state law asserting that Hi-Shear is liable for releasing Hazardous Substances into the environment in the vicinity of the Torrance Airport/Zamperini Field (the "Airport"), including from Hi-Shear's facility located at 2600 Skypark Drive, Torrance, CA, 90505 ("Hi-Shear Property") on land Hi-Shear leased from the City.  ECF No. 1.

D. On May 6, 2022, the City filed its First Amended Complaint adding CERCLA and other claims against Magellan Middletown, Inc. ("Magellan"), Robinson Helicopter Company, Inc. ("Robinson"), and Esterline Technologies Corp. ("Esterline").  ECF No. 438.  The City alleged that Robinson, Magellan, and Esterline each released Hazardous Substances into the environment on Property 1, Property 2, and Property 3 (as defined below), which are east and adjacent to the Hi-Shear Property and are sometimes referred to as the "East Adjacent Properties." The City further alleged that environmental contaminants have impacted the soil, perched groundwater, and regional groundwater, and have migrated east toward and beyond Crenshaw Boulevard.  Hi-Shear has denied liability to the City, filed cross-claims against Magellan, Robinson, and Esterline, and has also brought counter-claims against the City in this action.  *See*, *e.g.*, ECF Nos. 11, 13.

E.  In addition, Hi-Shear has filed third-party claims in this action against numerous other parties who are alleged to be responsible for the disposal of

2

hazardous substances in the vicinity of the Airport.  *See, e.g.,* ECF 14, 657.  In its third-party complaint, Hi-Shear has asserted CERCLA claims against the United States under 42 U.S.C. §§ 9607(a), 9613, alleging, *inter alia*, that the United States is liable for at least some of the response costs at issue due to alleged activities at the United States' former Nike missile battery number 57, which was located on City property adjacent to and west of Crenshaw Boulevard and south of Skypark Drive in the vicinity of the Airport.  The United States has denied liability to Hi-Shear and in turn has filed a CERCLA contribution counter-claim against Hi-Shear.  ECF No. 517.

F. Given the Parties' respective legal claims and defenses, the information exchanged during discovery in this action since the commencement of this action in 2017, and the environmental data collected regarding the nature and sources of contamination at the Site, Hi-Shear and the United States agree that a final settlement of Hi-Shear's claims and the United States' counter-claims in this case is in the public interest, that settlement is a reasonable compromise that will avoid the costs and uncertainties of further litigation between the Parties, and that entry of this Consent Decree is the most appropriate means of resolving the Parties' respective claims in this case.  Subject to the Court's approval, the Parties' settlement will reimburse Hi-Shear for a fair portion its response costs and benefit the cleanup by providing funding to Hi-Shear for its ongoing efforts to respond to

the contamination associated with the Site.

G. This Consent Decree is intended to constitute a full and final resolution of any and all claims that have been or could now or hereafter be asserted between the Hi-Shear and the United States regarding the Covered Matters (as defined below).

THEREFORE, without further litigation or adjudication of any disputed issue of fact or law, and upon consent of the Parties by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I.   JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Hi-Shear's and the United States' CERCLA claims in this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).  This Court has personal jurisdiction over the Parties.  The Parties may not challenge the terms of this Consent Decree on jurisdiction grounds or this Court's jurisdiction to enter and enforce this Consent Decree.

2. Venue is proper in this District pursuant to 42 U.S.C. § 9613(b) because the alleged releases of hazardous substances occurred in Torrance, California within this District.

## II.   PARTIES BOUND

3. This Consent Decree applies to, is binding upon and inures solely to the benefit of Hi-Shear and the United States, and their successors and assigns.  Except as specifically provided, this Consent Decree does not extend to or inure to the

4

benefit of any party, person, or entity other than Hi-Shear and the United States. Nothing in this Consent Decree shall be construed to make any other person or entity that is not a signatory to this Consent Decree a third-party beneficiary of this settlement between Hi-Shear and the United States.

## III.   DEFINITIONS

4. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning given to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree, the following definitions shall apply:

a.   "City" shall mean the City of Torrance, a California municipal corporation.

b.   "CERCLA" shall mean the Comprehensive Environmental, Response, and Liability Act of 1980, as amended, 42 U.S.C. Chapter 103.

c.   "Claims" means all past, present and future rights, duties, claims, obligations, actions, causes of action, suits, judgments, debts, damages, penalties, costs, fees, expenses, harms, injuries, liabilities, demands, notices, and administrative actions, claims or orders (including without limitation recoupment or setoff), of whatsoever kind or nature, whether known or unknown, suspected or unsuspected, patent or latent, fixed or contingent, matured or unmatured, liquidated

or unliquidated, and whether at law or in equity, or sounding in contract, tort or statute, or seeking legal damages, injunctive relief or other equitable or declaratory relief.

d.  "Covered Matters" shall mean any and all past, current or future Claims, as between Hi-Shear and the United States, known or unknown, arising from or related to the presence of any Solid Waste, Hazardous Waste, Hazardous Substance or other Pollutant or Contaminant at the Site, including but not limited to environmental contamination in the soil, soil gas, perched groundwater, and regional groundwater, or that has migrated through, beneath, or from the Site or hereafter migrates through, beneath, or from the Site. The Covered Matters shall not include any other non-Party's Claims against Hi-Shear or the United States, except to the extent that contribution protection arises from the United States' settlement of Hi-Shear's Claims against the United States.

e.  "Effective Date" shall mean the date upon which the approval of this Consent Decree by the Court is recorded on the Court's docket.

f.  "Hazardous Substance" shall take the definition at 42 U.S.C. § 9601(14).

g.  "Hazardous Waste" shall take the definition at 42 U.S.C. § 6903(5), as incorporated by CERCLA.

h.  "Hi-Shear" shall mean Hi-Shear Corporation, which does business as Lisi Aerospace at the Hi-Shear Property, including its predecessors, successors, and assigns.

i.  "RCRA" shall mean the Resource Conversation and Recovery Act, as amended, 42 U.S.C. Chapter 82.

j.  "Pollutant or Contaminant" shall take the definition at 42 U.S.C. § 9601(33).

k.  "Settlement Amount" means the sum of Two Hundred Fifty Thousand Dollars ($250,000), as provided in Paragraph 8.

l.  "Site" shall mean the real property and areas of environmental contamination located in the vicinity of, on, and beneath the Torrance Airport/Zamperini Field (the "Airport") and the Skypark Commercial Properties, including specifically, contamination within, beneath, or migrating from the Airport and the properties located at 2600 Skypark Drive, Torrance, CA ("Hi-Shear Property"); 2700 Skypark Drive, Torrance, CA (the "Lowes Property"); 24751 and 24777 Crenshaw Boulevard, Torrance, CA ("Property 1"); 24707, 24747 and 24701 Crenshaw Boulevard, Torrance, CA ("Property 2"); and 2530 and 2540 Skypark Drive, Torrance, CA ("Property 3"), and the real property located east of Crenshaw Boulevard at 2426-2430 Amsler Street, Torrance, CA (the "Amsler Property").  For purposes of this Consent Decree, the definition of

7

"Site" specifically includes the area of the former Nike missile battery number 57, located adjacent to the Airport runway, west of Crenshaw Boulevard, and south of Skypark Drive, Torrance, CA, and any alleged contamination within, beneath, or migrating from the former Nike area. The general geographic area included within the Site is illustrated in Appendix A to the Consent Decree.

m. "Solid Waste" shall take the definition at 42 U.S.C. § 6903(27).

n. "United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including but not limited to the United States Department of the Army, the United States Army Corps of Engineers, and the United States Department of Defense, as well as any other federal entity alleged to be liable for contamination at or migrating through, beneath, or from the Site, and their respective predecessor and successor departments, agencies, or instrumentalities.

## IV.   SCOPE AND EFFECT OF CONSENT DECREE

5. Each Party has been represented by its own experienced and independent counsel, has executed this Consent Decree after receiving advice from their counsel, has not relied upon any advice from the other Party's counsel, has had an adequate opportunity to conduct an independent investigation of all the applicable facts and circumstances relating to the claims at issue, and has read and understands the terms of this Consent Decree. This Consent Decree was

negotiated by and between the Parties' respective counsel and is executed in good faith and at arm's length as a fair and equitable compromise of Hi-Shear's claims and the United States' counter-claims in this action.

6. This Consent Decree shall constitute a full and final resolution between the Parties with respect to the Claims, whether or not asserted in this action, in accordance with the terms and conditions of this Consent Decree.

7. This Consent Decree reflects a compromise of disputed claims asserted by each Party against the other Party.  Nothing contained in this Consent Decree, including the execution of this Agreement or payment or receipt of the settlement proceeds, is or may be construed in any way to be an admission of any fact or of any wrongdoing or liability of any kind on the part of any Party or as evidence in support or defense of any settled Claim.  It is expressly understood that neither Party, by agreeing to this Consent Decree, admits to any factual allegations asserted in the above-captioned action or admits to liability or a violation of any law, rule, regulation, or policy.

## V.    PAYMENT BY THE UNITED STATES

8. Subject to the certifications in Paragraphs 11 and 12, as soon as reasonably practicable after the Effective Date and the conclusion of any appeals of this Court's approval of the Consent Decree, the United States will pay $250,000 to Hi-Shear by Automated Clearing House Electronic Funds Transfer or comparable

means.  The settlement funds are intended to compensate Hi-Shear for its alleged past or future CERCLA response costs.

9. The payment by the United States in Paragraph 8 is subject to the availability of funds appropriated for such purpose.  No provision of this Consent Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-42 and 1511-19, or any other applicable federal law.

10. If such payment is not made in full within 60 days after the Effective Date of this Consent Decree or the termination of any appeal regarding this Consent Decree's approval, whichever is later, then interest on the unpaid balance shall accrue on the 61st day after such later date.  Interest shall accrue at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26 of the United States Code.

11. Hi-Shear represents and warrants that in any subsequent settlement agreement involving a claim for indemnity by Hi-Shear, with any of its insurance carriers that are alleged to have provided insurance coverage for claims arising out of the alleged existence of contamination relating to the Site, Hi-Shear will make its best efforts to require all such settling insurance carriers to waive any and all rights or alleged rights of subrogation they have or may have as against the United States.  To the extent an applicable insurance policy permits Hi-Shear the right to

waive its insurer's right to subrogation, in any subsequent settlement agreement involving a claim for indemnity by Hi-Shear, with any of its insurance carriers that are alleged to have provided insurance coverage for claims arising out of the alleged existence of contamination relating to the Site, Hi-Shear agrees to waive any and all rights or alleged rights of subrogation they have or may have as against the United States under that applicable policy.

12. Hi-Shear shall not realize a double recovery regarding any of their costs being reimbursed or paid by the United States pursuant to this Consent Decree, whether through insurance, contract, or claims against the United States or other persons or entities.  Based on their knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. § 3729 et seq., and other applicable law, Hi-Shear hereby certifies to the United States that, other than the claims being resolved herein, they have neither sought nor received, nor will they seek or receive, reimbursement from the United States of any costs paid by the United States pursuant to this Consent Decree, and further agree, with regard to any contract or agreement with a department, agency, or instrumentality of the United States ("Federal Contract"), that (i) such costs will be deemed to be, and will be identified in their accounting systems as, "mutually agreed to be unallowable" costs subject to Federal Acquisition Regulation ("FAR") 31.201-6 and Cost Accounting Standard 405 and thus excluded from any billing, claim, or proposal

applicable to a Federal Contract; (ii) they shall not claim or receive such costs as allowable costs under a Federal Contract; (iii) they shall not claim or receive payment for such costs under any indemnification or hold harmless provision in any Federal Contract; and (iv) they shall not include such costs in general and administrative expenses, home office overhead, or other indirect cost pools or accounting categories if any portions of such cost pools or accounting categories have been or could be deemed allowable, allocable, or otherwise subject to recovery, directly or indirectly, pursuant to a Federal Contract.  The foregoing notwithstanding, the United States and Hi-Shear agree that this Consent Decree does not constitute a Federal Contract and that payments made by the United States under this Consent Decree are not payments or reimbursements under a Federal Contract.  Nothing in this paragraph or elsewhere in this Consent Decree is intended to preclude or otherwise impair the ability and rights of Hi-Shear to pursue its claims against other potentially responsible parties.

## VI.   MUTUAL RELEASE AND COVENANT NOT TO SUE

13. By Hi-Shear: Subject to the reservations in Paragraphs 16, upon approval and entry of this Consent Decree by the District Court, and in consideration of the payment in Paragraph 8 of this Consent Decree, and except as otherwise specifically provided in this Consent Decree, Hi-Shear releases and covenants not to sue the United States and its officers, agents, representatives, attorneys,

consultants, or employees acting within the scope of their employment with respect to the Covered Matters.  This release and covenant applies to any and all claims, causes of action, suits or demands of any kind whatsoever, known or unknown, in law or in equity which Hi-Shear may have had, or hereafter have, including, but not limited to, claims under CERCLA, section 7002(a) of RCRA, the United States Constitution, the Federal Tort Claims Act, 42 U.S.C. Chapter 171, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State Constitution, State law, or at common law regarding the Covered Matters.  This release and covenant extends only to the United States and its officers, agents, representatives, attorneys, consultants, or employees acting within the scope of their employment and does not extend to any other person or entity not a Party to this Consent Decree.

14. <u>By the United States</u>:  Subject to the reservations in Paragraphs 15 and 16, upon approval and entry of this Consent Decree by the District Court, and except as otherwise specifically provided in this Consent Decree, the United States releases and covenants not to sue Hi-Shear and its officers, agents, representatives, attorneys, consultants, or employees acting within the scope of their employment with respect to the Covered Matters.  This release and covenant applies to any and all claims, causes of action, suits or demands of any kind whatsoever, known or unknown, in law or in equity which the United States may have had, or hereafter

have, including, but not limited to, claims under CERCLA, section 7002(a) of RCRA, the United States Constitution, the State Constitution, State law, or at common law with respect to Covered Matters. This release and covenant extends only to Hi-Shear, including its officers, agents, representatives, attorneys, consultants, or employees acting within the scope of their employment and does not extend to any other person or entity not a Party to this Consent Decree.

15. Notwithstanding the release and covenant not to sue in Paragraph 14, the United States specifically reserves its right to assert against Hi-Shear any claims or actions regarding the Site brought on behalf of the United States Environmental Protection Agency ("EPA"), any federal agency functioning in its capacity as a lead or cooperating agency under the National Contingency Plan for the Site, or a federal natural resource trustee. Notwithstanding any other provision of this Consent Decree, the United States, on behalf of EPA and any other agency so authorized, also retains all authority and reserves all rights to take any and all response actions authorized by law at the Site. Nothing contained in this Consent Decree shall be construed to limit the authority of the United States, including EPA, to undertake any action pursuant to applicable law or regulation.

16. The mutual releases and covenants not to sue set forth in Paragraphs 13 and 14 do not preclude either Hi-Shear or the United States from enforcing the terms of

this Consent Decree or otherwise seeking to remedy an alleged breach of this Consent Decree by the other Party.

## VII.   EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

17. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment with respect to Hi-Shear's Claims against the United States and the United States' counter-Claims against Hi-Shear in this action.

18. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person or entity not a party to this Consent Decree.  Unless otherwise precluded by this Consent Decree, each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person or entity not a party to this Consent Decree.

19. The Parties agree that the payment to be made by the United States, pursuant to this Consent Decree represents a good faith compromise and resolution of Hi-Shear's claims against the United States in this action, and the Parties agree that the compromise represents a fair, reasonable, and equitable discharge for Covered Matters addressed in this Consent Decree.

20. The Parties agree that the United States is entitled to contribution protection under CERCLA section 113(f), 42 U.S.C. § 9613(f) and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United States' liability to persons not party to this Consent Decree with respect to Covered Matters.

21. Once executed, Hi-Shear shall not oppose entry of this Consent Decree as a full and final settlement.  The Parties agree to join in and/or support, as may be appropriate, such legal proceedings as necessary to secure the Court's approval and entry of this Consent Decree and to secure and maintain the contribution protection afforded by this Consent Decree and by law.  As between each other, each Party shall bear its own costs, expenses, and attorneys' fees associated with this action.

## VIII.  DISMISSAL WITH PREJUDICE

22. Upon approval and entry of this Consent Decree by the Court, and subject to receipt by Hi-Shear of the payment provided for in Paragraph 8, all claims between the Parties in this action shall be dismissed with prejudice.

## IX.    OTHER CLAIMS

23. Subject to the limitations set forth herein, nothing in this Consent Decree is intended to be, nor shall be construed as, a waiver, release, or covenant not to sue for any claim or cause of action, administrative or judicial, in law or in equity, that

a Party may have against any person, firm, partnership, trust, corporation or any other entity that is not a party to this Consent Decree.

## X.     DISPUTE RESOLUTION

24. Any dispute that arises with respect to the meaning or requirements of this Consent Decree first shall be the subject of informal negotiations between the Parties affected by the dispute to attempt to resolve such dispute.  The period for informal negotiations shall not extend beyond 60 days beginning with written notice by one Party to the other affected Party or Parties that a dispute exists, unless agreed to in writing by those Parties.  If a dispute between the Parties cannot be resolved by informal negotiations, then, within 14 days after the end of the informal negotiations period, any Party may notify the Court of the dispute and the need for a resolution by the Court or through alternative dispute resolution, unless the Parties agree in writing to extend the informal negotiations period or to an alternative method of dispute resolution.

## XI.    RETENTION OF JURISDICTION

25. Notwithstanding any other provision of this Consent Decree, the Court shall retain jurisdiction for the purpose of enforcing the Parties' obligations under this Consent Decree, if necessary, and for resolving disputes in accordance with Paragraph 24 of this Consent Decree.

## XII.   APPENDICES

26. Appendix A is attached and incorporated into this Consent Decree.

## XIII.  WRITTEN COMMUNICATIONS

27. Unless otherwise stated in this Consent Decree, all written communications between the Parties made pursuant to this Consent Decree shall be by first-class U.S. Mail delivery to the following addresses (or by other agreed means):

     a.   <u>Communications to the United States</u>:

         Chief
         United States Department of Justice
         Environment & Natural Resources Division
         Environmental Defense Section
         P.O. Box 7611
         Washington, DC 20044-7611
         Re: DJ# 90-11-6-21288

         With a copy to:

         David D. Mitchell, Esq.
         United States Department of Justice
         Environment & Natural Resources Division
         Environmental Defense Section
         P.O. Box 7611
         Washington, DC 20044-7611
         david.mitchell@usdoj.gov

     b.   <u>Communications to Hi-Shear</u>:

         Hi-Shear Corporation
         Attn: Christian Darville
         2600 Skypark Drive
         Torrance, CA 90505

         Hamrick & Evans, LLP

Attn: David L. Evans, Esq.
Jeff W. Poole, Esq.
2600 West Olive Avenue, Suite 1020
Burbank, CA 91505
(818) 763-5292, ext. 122
(818) 763-2308 facsimile
dlevans@hamricklaw.com
jpoole@hamricklaw.com

## XIV.  MODIFICATIONS

28. Any non-material modifications to this Consent Decree shall be in writing and signed by the Parties and shall be effective without Court approval.  Any material modifications to this Consent Decree shall be in writing, signed by Hi-Shear and the United States, and shall be effective only upon approval by the Court.

## XV.  SIGNATORIES/SERVICE

29. The individuals signing this Consent Decree below hereby certify that they are authorized to bind their respective Party to this Consent Decree.  Any change in ownership, corporate or other legal status of any Party to this Consent Decree shall in no way alter the obligations of either Party to this Consent Decree.

## XVI.  GENERAL PROVISIONS

30. The Parties have jointly drafted this Consent Decree and the language of this Decree shall not be construed in favor of or against either Party based on its role in the drafting process.

31. This Consent Decree shall be governed and interpreted in accordance with federal law.

32. Any paragraph headings or subparagraph headings or section titles to this Consent Decree are provided solely as a matter of convenience to the reader and shall not be construed to alter the meaning of any paragraph or provision of the Consent Decree.

33. This Consent Decree may be executed in any number of original counterparts, each of which shall be deemed to constitute one agreement.  The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

34. This Consent Decree contains the complete agreement between the Parties regarding the subject matter addressed herein and fully supersedes all prior contracts, agreements, understandings, negotiations or discussions, oral or written, relating to the subject matter hereof.  There are no warranties, representations,

agreements or understandings, oral or written, relating to the subject matter hereof that are not fully expressed or provided for herein.

IT IS SO ORDERED.

Dated: July 1, 2024

_____
HONORABLE FRED W. SLAUGHTER
UNITED STATES DISTRICT JUDGE

1   So **CONSENTED** and **AGREED** to by:

2

For Hi-Shear Corporation:

3

4

5   Date: 03/04/2024.

6                           CHRISTIAN DARVILLE

7                           Executive Vice President Administration and

8                           Strategic Development for North America

9   For the United States of America:

10

11                           TODD KIM

12                           Assistant Attorney General

13                           Environment & Natural Resources Division

14   Date: 03/05/2024

15                           DAVID D. MITCHELL

16                           Environmental Defense Section

17                           Attorney for the United States

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A



**SCP LOCATION**

SITE LOCATION MAP
Air Sparging Pilot Study Work Plan
Skypark Commercial Properties
Torrance, California

**GE&R**

**GENESIS ENGINEERING & REDEVELOPMENT**
115 S. School Street   ·   Lodi, CA 95240
Tel: 209.599.2004   ·   Fax: 209.433.3990
www.gercorp.com

| Designed: | SS | Project Number: | 237-AD-1 | Figure |
|---|---|---|---|---|
| Drawn: | DH | File: | 237AD1_1 | 1 |
| Checked: | SV | Revision: | xxxxx | Date: 04/10/23 |

Copyright © 2013 National Geographic Society, i-cubed



CITY052132